243 U.S. 426 (1917)
BUNTING
v.
STATE OF OREGON.
No. 38.
Supreme Court of United States.
Argued April 18, 1916.
Restored for reargument June 12, 1916.
Reargued January 19, 1917.
Decided April 9, 1917.
ERROR TO THE SUPREME COURT OF THE STATE OF OREGON.
*427 Mr. W. Lair Thompson, with whom Mr. C.W. Fulton was on the briefs, for plaintiff in error.
Mr. Felix Frankfurter, with whom Mr. George M. Brown, Attorney General of the State of Oregon, and Mr. J.O. *431 Bailey, Assistant Attorney General of the State of Oregon, were on the briefs, for defendant in error.
Restored to docket for reargument June 12, 1916.
*433 MR. JUSTICE McKENNA delivered the opinion of the court.
Indictment charging a violation of a statute of the State of Oregon, § 2 of which provides as follows:
"No person shall be employed in any mill, factory or *434 manufacturing establishment in this State more than ten hours in any one day, except watchmen and employees when engaged in making necessary repairs, or in case of emergency, where life or property is in imminent danger; provided, however, employees may work overtime not to exceed three hours in any one day, conditioned that payment be made for said overtime at the rate of time and one-half of the regular wage."
A violation of the act is made a misdemeanor, and in pursuance of this provision the indictment was found. It charges a violation of the act by plaintiff in error, Bunting, by employing and causing to work in a flour mill belonging to the Lakeview Flouring Mills, a corporation, one Hammersly for thirteen hours in one day, Hammersly not being within the excepted conditions, and not being paid the rate prescribed for overtime.
A demurrer was filed to the indictment, alleging against its sufficiency that the law upon which it was based is invalid because it violates the Fourteenth Amendment of the Constitution of the United States and the Constitution of Oregon.
The demurrer was overruled; and the defendant, after arraignment, plea of not guilty and trial, was found guilty. A motion in arrest of judgment was denied and he was fined $50. The judgment was affirmed by the Supreme Court of the State. The Chief Justice of the court then allowed this writ of error.
The consonance of the Oregon law with the Fourteenth Amendment is the question in the case, and this depends upon whether it is a proper exercise of the police power of the State, as the Supreme Court of the State decided that it is.
That the police power extends to health regulations is not denied, but it is denied that the law has such purpose or justification. It is contended that it is a wage law, not a health regulation, and takes the property of plaintiff in *435 error without due process. The contention presents two questions: (1) Is the law a wage law, or an hours of service law? And (2) if the latter, has it equality of operation?
Section 1 of the law expresses the policy that impelled its enactment to be the interest of the State in the physical well-being of its citizens and that it is injurious to their health for them to work "in any mill, factory or manufacturing establishment" more than ten hours in any one day; and § 2, as we have seen, forbids their employment in those places for a longer time. If, therefore, we take the law at its word there can be no doubt of its purpose, and the Supreme Court of the State has added the confirmation of its decision, by declaring that "the aim of the statute is to fix the maximum hours of service in certain industries. The act makes no attempt to fix the standard of wages. No maximum or minimum wage is named. That is left wholly to the contracting parties."
It is, however, urged that we are not bound by the declaration of the law or the decision of the court. In other words, and to use counsel's language, "the legislative declaration of necessity, even if the act followed such declaration, is not binding upon this court. Coppage v. Kansas, 236 U.S. 1." Of course, mere declaration cannot give character to a law nor turn illegal into legal operation, and when such attempt is palpable this court necessarily has the power of review.
But does either the declaration or the decision reach such extreme? Plaintiff in error, in contending for this and to establish it, makes paramount the provision for overtime; in other words, makes a limitation of the act the extent of the act  indeed, asserts that it gives, besides, character to the act, illegal character.
To assent to this is to ascribe to the legislation such improvidence of expression as to intend one thing and effect another, or artfulness of expression to disguise illegal purpose. We are reluctant to do either and we think all *436 the provisions of the law can be accommodated without doing either.
First, as to plaintiff in error's attack upon the law. He says: "The law is not a ten-hour law; it is a thirteen-hour law designed solely for the purpose of compelling the employer of labor in mills, factories and manufacturing establishments to pay more for labor than the actual market value thereof." And further: "It is a ten-hour law for the purpose of taking the employer's property from him and giving it to the employe; it is a thirteen-hour law for the purpose of protecting the health of the employe." To this plaintiff in error adds that he was convicted, not for working an employee during a busy season for more than ten hours, but for not paying him more than the market value of his services.
The elements in this contention it is difficult to resolve or estimate. The charge of pretense against the legislation we, as we have already said, cannot assent to. The assumption that plaintiff in error was convicted for not paying more in a busy season than the market value of the services rendered him or that under the law he will have to do so, he gives us no evidence to support. If there was or should be an increase of demand for his products, there might have been or may be an increase of profits. However, these are circumstances that cannot be measured, and we prefer to consider with more exactness the overtime provision.
There is a certain verbal plausibility in the contention that it was intended to permit 13 hours' work if there be 15 1/2 hours' pay, but the plausibility disappears upon reflection. The provision for overtime is permissive, in the same sense that any penalty may be said to be permissive. Its purpose is to deter by its burden and its adequacy for this was a matter of legislative judgment under the particular circumstances. It may not achieve its end, but its insufficiency cannot change its character *437 from penalty to permission. Besides, it is to be borne in mind that the legislature was dealing with a matter in which many elements were to be considered. It might not have been possible, it might not have been wise, to make a rigid prohibition. We can easily realize that the legislature deemed it sufficient for its policy to give to the law an adaptation to occasions different from special cases of emergency for which it provided, occasions not of such imperative necessity, and yet which should have some accommodation  abuses prevented by the requirement of higher wages. Or even a broader contention might be made that the legislature considered it a proper policy to meet the conditions long existent by a tentative restraint of conduct rather than by an absolute restraint, and achieve its purpose through the interest of those affected rather than by the positive fiat of the law.
We cannot know all of the conditions that impelled the law or its particular form. The Supreme Court, nearer to them, describes the law as follows: "It is clear that the intent of the law is to make 10 hours a regular day's labor in the occupations to which reference is made. Apparently the provisions for permitting labor for the overtime on express conditions were made in order to facilitate the enforcement of the law, and in the nature of a mild penalty for employing one not more than three hours overtime. It might be regarded as more difficult to detect violations of the law by an employment for a shorter time than for a longer time. This penalty also goes to the employee in case the employer avails himself of the overtime clause."
But we need not cast about for reasons for the legislative judgment. We are not required to be sure of the precise reasons for its exercise or be convinced to the wisdom of its exercise. Rast v. Van Deman & Lewis Co., 240 U.S. 342, 365. It is enough for our decision if the legislation under review was passed in the exercise of an admitted power of government; and that it is not as complete as *438 it might be, not as rigid in its prohibitions as it might be, gives perhaps evasion too much play, is lighter in its penalties than it might be, is no impeachment of its legality. This may be a blemish, giving opportunity for criticism and difference in characterization, but the constitutional validity of legislation cannot be determined by the degree of exactness of its provisions or remedies. New policies are usually tentative in their beginnings, advance in firmness as they advance in acceptance. They do not at a particular moment of time spring full-perfect in extent or means from the legislative brain. Time may be necessary to fashion them to precedent customs and conditions and as they justify themselves or otherwise they pass from militancy to triumph or from question to repeal.
But passing general considerations and coming back to our immediate concern, which is the validity of the particular exertion of power in the Oregon law, our judgment of it is that it does not transcend constitutional limits.
This case is submitted by plaintiff in error upon the contention that the law is a wage law not an hours of service law, and he rests his case on that contention. To that contention we address our decision and do not discuss or consider the broader contentions of counsel for the State that would justify the law even as a regulation of wages.
There is a contention made that the law, even regarded as regulating hours of service, is not either necessary or useful "for preservation of the health of employes in mills, factories and manufacturing establishments." The record contains no facts to support the contention, and against it is the judgment of the legislature and the Supreme Court, which said: "In view of the well-known fact that the custom in our industries does not sanction a longer service than 10 hours per day, it cannot be held, as a matter of law, that the legislative requirement is unreasonable or arbitrary as to hours of labor. Statistics *439 show that the average daily working time among workingmen in different countries is, in Australia, 8 hours; in Great Britain, 9; in the United States, 9 3/4; in Denmark, 9 3/4; in Norway, 10; Sweden, France, and Switzerland, 10 1/2; Germany, 10 1/4; Belgium, Italy, and Austria, 11; and in Russia, 12 hours."
The next contention of plaintiff in error is that the law discriminates against mills, factories and manufacturing establishments in that it requires that a manufacturer, without reason other than the fiat of the legislature, shall pay for a commodity, meaning labor, one and one-half times the market value thereof while other people purchasing labor in like manner in the open market are not subjected to the same burden. But the basis of the contention is that which we have already disposed of, that is, that the law regulates wages, not hours of service. Regarding it as the latter, there is a basis for the classification.
Further discussion we deem unnecessary.
Judgment affirmed.
The CHIEF JUSTICE, MR. JUSTICE VAN DEVANTER and MR. JUSTICE McREYNOLDS, dissent.
MR. JUSTICE BRANDEIS took no part in the consideration and decision of the case.