**BRADFORD v. GAYLORD PRODUCTS, Inc.**

No. 46 C 1917.

District Court, N. D. Illinois, E. D. Jan. 21, 1948.

Phee & Handmacher, of Chicago, Ill., for plaintiff.

Willard C. Walters, of Chicago, Ill., for defendant.

BARNES, District Judge.

This cause has been presented to the court for decision upon the pleadings, a stipulation of facts, and the briefs of the parties.

The complaint alleges, briefly, that plaintiff, employed by defendant as a technician and sales demonstrator in the distribution of cosmetics and beauty shop supplies during the period from February 18, 1946, to October 7, 1946, is entitled to recover from defendant unpaid overtime compensation and damages under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. The answer denies that plaintiff, while in the employ of defendant was engaged in interstate commerce or in the production of goods for interstate commerce within the meaning of the Act, and, as a further defense, alleges that plaintiff was employed by defendant, during the period in question, in the capacity of an "outside salesman" and is therefore exempt from the protection of the Act.

1. The court agrees with the plaintiff that the facts of this case warrant the holding that plaintiff was, during her term of employment, "engaged * * * in the production of goods for commerce" (Sec. 206(a), Title 29 U.S.C.A.), as those words have been defined by the Act and interpreted by the courts.

2. The real controversy here concerns whether or not plaintiff was an "outside salesman," and therefore exempt from the provisions of the Act.

Section 13(a) of the Fair Labor Standards Act (Sec. 213, Title 29 U.S.C.A.) reads:

"The provisions of section 6 and 7 of this title shall not apply with respect to (1) any employee employed * * * in the capacity of outside salesman (as such terms are defined and delimited by regulations of the Administrator);"

The Rules and Regulations Implementing the Fair Labor Standards Act defines an "outside salesman" as follows (Regulation 541.5, p. 480 Title 29 U.S.C.A.):

"Outside Salesman. The term 'employee employed * * * in the capacity of outside salesman' in section 13(a)(1) of the act shall mean any employee—

"(A) who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business in

"(1) making sales within the meaning of section 3(k) of the act; or

"(2) obtaining orders or contracts for the use of facilities for which a consideration will be paid by the client or customer, and

"(B) whose hours of work of the same nature as that performed by nonexempt employees do not exceed 20 percent of the number of hours worked in the workweek by such nonexempt employees; provided that work performed incidental to and in conjunction with the employee's own outside sales solicitations, including incidental deliveries and collections, shall not be regarded as nonexempt work."

Section 3(k) of the Fair Labor Standards Act (Sec. 203, Title 29 U.S.C.A.) reads:

"(k) 'Sale' or 'sell' includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition."

Regarding the duties of a "sales technician," the Stipulation of Facts reads:

"During the period plaintiff was employed by defendant whenever a Territory

Manager believed that sales of cosmetics and beauty supplies could be increased by intensive work in the field, he would request the Sales Manager to arrange that Sales Technicians be sent to certain jobbers or distributors. If the Sales Manager approved the request he would order the Director of Sales Technicians to assign Sales Technicians to the territory. * * *

"Upon assignment of a Sales Technician to a jobber or distributor, her first duty is to sell defendant's products to the jobber or distributor. This may include orders not only for products or supplies theretofore purchased by the jobber or distributor, but also for new items or products not theretofore purchased from defendant.

"Thereafter the Sales Technician calls upon beauty parlors in the jobber's or distributor's territory. Appointments for certain of these calls are made by the jobber or distributor; other calls are made without prior appointment or introduction upon the Sales Technician's initiative. On these calls the Sales Technician attempts to obtain orders for defendant's products. In certain of these beauty parlors the Sales Technician will do a hair wave using defendant's products on a volunteer model. In the process, the Sales Technician explains to the person in charge of the beauty parlor the workings and qualities of defendant's products and supplies. Upon completion of the demonstration, the Sales Technician endeavors to take an order from the beauty parlor operator for defendant's products and supplies. More often, however, the Sales Technician will attempt to obtain an order without doing a hair wave.

"In the period from December, 1946, to September, 1947, the Sales Technicians averaged fourteen calls on beauty parlors and four waves per week. On occasion the Sales Technician will demonstrate a hair wave, using defendant's products, at a meeting of several beauty parlor operators, and then endeavor to take orders from each of them.

"After calling upon beauty shops the Sales Technician goes back to the jobber or distributor and reporting on the suc-cess of her own endeavors, attempts to sell him more merchandise.

"All orders taken by Sales Technicians from beauty parol operators are made out in triplicate. One copy is forwarded to the jobber or distributor; one copy is sent to defendant, and one copy is kept by the Sales Technician. The jobber or distributor fills the order and delivers it to the beauty parlor operator.

"Approximately three times a year there may be an industry show at which companies in the industry show their products. Sales Technicians may be asked to attend a show. Many jobbers, distributors and beauty shop operators attend the shows. At the shows Sales Technicians take orders for defendant's products and set waves on models in the process. The Sales Technicians are particularly helpful at these shows because they know the customers. The average show lasts a few days.

"Plaintiff, Sally Bradford, like all Sales Technicians, was trained in the fundamentals of salesmanship and in the use of defendant's products before being sent out to the trade. She, as well as the other Sales Technicians, was also required to attend sales conferences under the direction of the Sales Manager, at the defendant's office from time to time. Those conferences were in the nature of refresher courses in salesmanship and in the use of defendant's new products.

"Plaintiff was paid $25 per week during her training period from February 18, 1946, to March 4, 1946. She was paid at the rate of $150 per month, plus expenses from March 4, 1946, to April 1, 1946. From April 1, 1946, to the date of her discharge, October 14, 1946, she received $175 per month, plus expenses. In addition, from October 1, 1946, she, like other Sales Technicians, was entitled to 2% of her gross sales as commission."

"In the period from October 1, 1946, through August, 1947, the sales per Sales Technician averaged $1,047.50 per month."

It seems clear to the court, from the foregoing facts, that plaintiff's status was that of a "salesman," that she was primarily employed to effect sales and that

the demonstrations of the uses of defendant's products, which consumed a comparatively small part of her time, were incidental to the solicitation of orders for the products. And that plaintiff was an "outside" salesman is established by the following portion of the Stipulation of facts, as well as the portions above quoted:

"Defendant has no control over the hours worked by Sales Technicians and had none over the hours worked by plaintiff. The Sales Technicians work such hours as suit their own convenience and that of the jobbers, distributors and beauty parlors."

The court concludes that plaintiff was an "outside salesman" as the term is used in Section 13(a)(1) of the Act and as defined by the Regulations, and was exempt from the provisions of the Act.

Plaintiff's only answer is found in that portion of her brief which reads as follows:

"Admittedly, the plaintiff's activity or employment included the soliciting of orders and the making of sales in conjunction with her sales promotion and demonstration. However, it should be observed that greater percent (far greater than twenty percent) of the plaintiff's sales were made on behalf of the defendant's jobber. All sales made by the plaintiff to beauty parlors in any jobber's territory were billed and shipped by the jobber and not by the defendant. Insofar as the defendant was concerned, the plaintiff's status was that of a demonstration technician engaged in sales missionary work. The selling done by the plaintiff inured to the direct benefit of the jobber and only incidentally to the benefit of the defendant who employed, compensated and directed the plaintiff. Obviously, for an employer to be exempt from the provisions of Sec. 7(a), it must show that the selling or solicitation of sales by its employee inured to the benefit of the employer directly and not in a mere incidental way."

There is a misstatement of fact in the foregoing quotation. It is true that the sales referred to did not directly benefit the employer, but it is not true that they only incidentally benefited the employer. The fact is that they indirectly, and not merely incidentally, benefited the employer. There is no requirement of the law that for an employer to be exempt from the provisions of Section 7(a), it must show that the selling or solicitation of sales by its employee inured to the benefit of the employer directly.

Counsel for defendant may prepare and, on notice, present drafts of findings of fact, conclusions of law, and a judgment order not inconsistent with the foregoing.