AMÉRICO D. MIRANDA, INC., formerly, now MIRANDA & EGUÍA, INC., Plaintiff and Appellee, *v.* ONOFRE FALCÓN, Defendant and Appellant; SECRETARY OF JUSTICE, Intervener.

No. 2.    Decided October 26, 1961.

*A. Figueroa Rivera* for petitioner. *Rodríguez Ema & Rodríguez Ramón* for appellee Miranda & Eguía, Inc. *Hiram R. Cancio, Secretary of Justice, Arturo Estrella, Assistant ·Secretary of Justice,* and *Edgar S. Belaval, Assistant Attorney General,* for intervener.

MR. JUSTICE RIGAU delivered the opinion of the Court.

Onofre Falcón, appellant herein, worked for the appellee firm as traveling salesman throughout the Island, in the wholesale business using for such purpose a vehicle furnished by that firm. In an action of debt filed by the plaintiff-appellee against the appellant herein, the latter counterclaimed for recovery of a sum of money for extra hours allegedly worked by him. It has been established that Falcón worked as selling agent or .traveling salesman for a fixed salary and that no specific agreement was made on working hours.

Appellant contends that, notwithstanding the provisions of Mandatory Decree No. 16 of the Minimum Wage Board of Puerto Rico and of Act No. 379 of May 15, 1948 (Sess. Laws, p. 1254), which establishes the legal working day, he is entitled to extra compensation for extra hours under § 16, Art. II of the Constitution of Puerto Rico. He therefore further contends that both Mandatory Decree No. 16 and Act No. 379 are unconstitutional as respects this point.

■ Mandatory Decree No. 16 fixes the minimum wage, the maximum hours of work, and other working conditions for employees in the wholesale trade. Rules and Regulations of Puerto Rico, Title 29, § 245n–271 *et seq.* The said decree provides in its Art. I-C that Arts. II, IV, and V-A "shall not apply with respect to any employee who works in a bona fide capacity as a professional or as a traveling salesman." Article II prescribes the minimum wage in activities connected with the wholesale trade; Art. IV prescribes the maximum hours of work; and Art. V-A the weekly rest

period.[1] As has been seen, the decree excludes traveling salesmen from its provisions bearing on minimum wage and maximum hours of work, so that the decree would not constitute sufficient ground for appellant's claim.

■ Act No. 379 of May 15, 1948 (Sess. Laws, p. 1254, 29 L.P.R.A. § 271 *et seq.*), as we already stated, establishes the legal working day in Puerto Rico and makes provision for regular hours of work, extra hours, extra compensation for extra hours, payrolls, etc. This Act also excludes from its ambit the traveling agents. Said Act No. 379 provides that "Every employer who employs or permits an *employee* to work during extra hours shall be obliged to pay him for each extra hour a wage rate equal to double the rate agreed upon for regular hours." (Italics ours.) 29 L.P.R.A. § 274. In defining the term "employee," the same statute reads as follows: " 'Employee' includes every employee, workman, day laborer, artisan, laborer, clerk, shop clerk, and every person employed for wages, salary, day wages, or any other form of compensation in any occupation, establishment, business, or industry, *excepting traveling agents* and peddlers. The word 'employee' shall not include executives, administrators, or professionals." (Italics ours.) 29 L.P.R.A. § 288. These exclusions have been upheld at times explicitly and at other times impliedly by this Court on several occasion. *Hull Dobbs Co.* v. *Superior Court*, 82 P.R.R. 73, 81 (1961) ; *Doyle* v. *Polypane Packaging Co.*, 80 P.R.R. 218, 223 (1958) ; *Sierra* v. *Long Construction Co.*, 76 P.R.R. 391, 397 (1954) ; *De Arteaga* v. *Club Deportivo*, 73 P.R.R. 407, 411 (1952) ; *Correa* v. *Mario Mercado e Hijos*, 72 P.R.R. 77, 85 (1951). Nor could appellant's claim founded on Act No. 379 *supra*, prescribing the legal work day, be upheld.

---

[1] The numbers cited are the numbers of the articles as they appear in the Decree published by the Department of Labor, Government Printing Press, 1952. In 29 R. & R. P. R. they correspond to § § 245n-272, 245n-274, and 245n-275 (a), respectively.

Section 16 of Art. II of the Constitution of Puerto Rico reads as follows: "The right of every employee to choose his occupation freely and to resign therefrom is recognized, as is his right to equal pay for equal work, to a reasonable minimum salary, to protection against risks to his health or person in his work or employment, and to an ordinary workday which shall not exceed eight hours. An employee may work in excess of this daily limit only if he is paid extra compensation as provided by law, at a rate never less than one and one-half times the regular rate at which he is employed." L.P.R.A., Vol. 1, p. 183.

Does this constitutional provision include traveling salesmen as respects the eight-hour working day limit?

At the commencement of the constituent proceedings, the School of Public Administration of the University of Puerto Rico organized a group of experts and scholars of political science and constitutional law to give legal advice to the Constituent Convention. That group prepared a number of valuable reports which were submitted to the Constituent Convention in the months of September to December 1951. These reports have been compiled in one volume entitled *La Nueva Constitución de Puerto Rico.*[2] In Ch. II of this work, which is devoted to the Bill of Rights, under the subtitle *"Los Derechos Relativos al Trabajo"* the following is stated:

"The rights to fair wages, free employment selection, equitable conditions, and protection against unemployment are worthy of mention in the constitutional document, for the same reasons and with the same exceptions set out hereinabove with respect to the right to obtain employment. *The insular and federal laws bearing on minimum wages, fair standards, and other aspects relating to labor relations are well known."* *Op. cit.* at 22. (Italics ours.)

---

[2] Editions of the University of Puerto Rico, 1954.

The said group of advisers recommended the inclusion in our Constitution of a reference to those rights, for it was of the opinion that there should be included provisions in our new Bill of Rights so that the Constitution would interpret "adequately the democratic will of the Puerto Ricans at the present time." In this respect, the said group stated as follows:

"The people of Puerto Rico have shown consistently, both in ideology and in practice, that they have faith in the fundamental values of the liberal tradition, in the liberty and dignity of the individual as the last point of evaluation reference for the social organization. They have strengthened the ideals and practices of democracy in its economic, political, and social aspects. They deserve recognition for the excellent effort made to contribute to the revendication of democracy as to their capacity to cope with the problems arising out of the flaws of the capitalistic system. The quality and respectability *of these achievements* require constitutional provisions of the same category as are included in the preamble, in the Bill of Rights, and throughout the fundamental law. This will be our first democratic Constitution in four and one half centuries of our existence as an organized community, and we can not miss such opportunity." *Op cit.* at 216. (Italics ours.)

From the recommendations made on these points, it may be seen that the authors of that work had in mind the "well-known insular and federal laws" bearing on fair standards and other aspects connected with labor conditions and the "achievements" made by the Puerto Ricans in the betterment of their democracy.

In our search for the meaning of the aforesaid section, it is proper that we inquire into the ideas and purposes which the constituents had in mind in drafting and approving the said section. In the course of its business, the Bill of Rights Committee held several public hearings. One of them was devoted to labor rights. The detailed reference of these hearings, testimonies, and memoranda appear in the ap-

pendixes of the Committee Report prepared by its secretary.[3] From the record of the second public hearing held on October 26, 1951, we cite the following. At the opening of the hearing the Chairman of the Committee, Jaime Benítez, said at p. 3: "What we are considering here is the rights of the laborers, those rights which in our opinion are so permanent, so urgent, of such a decisive character as must necessarily be safeguarded in this initial basic document of the People of Puerto Rico."

See the following colloquy (p. 37 of the record of the hearing) between Lino Padrón Rivera and Hipólito Marcano:

"MR. LINO PADRÓN: ... I wish the colleague, as a labor leader, to explain to me why the movement is interested, the labor movement, in that these labor rights which have been written in the laws a long time ago and which operate in Puerto Rico by virtue of laws of the Legislative Assembly, why is it interested in incorporating them in the Constitution? What is the difference between a labor right incorporated in a separate law of the Legislative Assembly and a labor right incorporated in the Constitution?

"MR. MARCANO: It is the opinion of the labor movement and mine personally that when a right of that nature is guaranteed by law, it is subject to the will of 19 senators and 39 representatives in general terms, and in more practical terms it is subject to the quorum in the House and in the Senate at the time of passing it, and is ultimately subject to the approval of the Governor. That is to say, that that law may be rapidly amended or repealed. Now, when you guarantee that right in the Constitution, there is greater protection against anyone who may wish to amend the Constitution, for it is not so easy to amend it and to suit it to his own interests. It is easy, however, to pass a law or amend it.

"MR. PADRÓN RIVERA: What the movement seeks is the stability of rights?

"MR. MARCANO: Stability of rights."

---

[3] Appendixes mimeographed and collated in the Office of the Secretary of Records, Proceedings, and Committees of the Constituent Convention, Capitol of Puerto Rico.

In commenting the constitutional provision under consideration (§ 16, Art. II), it is stated in the Report of the Bill of Rights Committee as follows: "The Committee stresses the high dignity of the human effort *and devotes this section* to point out the basic rights *of the laborer as such.* It lays special emphasis on *the mass of the laboring class which, by reason of special abandonment, has historically been in need of, although it has not always received, social protection.* 21 *Revista Jurídica de la Universidad de P.R.* 25. (Italics ours.)

Further on it is said in the same Report: "The rights herein recommended *exist at present* and are expressly guaranteed in the existing laws, or are implicitly incorporated in other constitutional provisions. It has been deemed convenient to incorporate them in the Bill of Rights for the purpose of *foreclosing possible future vulnerations.*" (*Op. cit.* at 27.) (Italics ours.) It must be recalled that when the Constitution established by its § 16 the eight-hour workday in 1952, it had already been guaranteed by Act No. 379 of May 15, 1948.

A specific example, also referring to § 16 under consideration, and which evidences the purpose of the Constituent Convention in approving that section as drawn up, is this. The Bill of Rights Committee recommended the establishment of a workday not to exceed eight hours, and stated that "There may be *special circumstances or emergency* to warrant, on certain occasions, a longer workday." *Op. cit.* at 26. (Italics ours.) The determination of such special circumstances would rest on the Legislative Assembly. The text proposed by the Committee would have established an inflexible eight-hour workday, except in cases of special circumstances or emergency. This requirement of special circumstances or emergency was the object of concern and deliberation by the constituents. Since the legislation in force at the time our Constitution was being drawn up, as we have seen, authorized work in excess of eight hours with extra pay and without

the need of special circumstances or emergency (Act No. 379 of May 15, 1948, 29 L.P.R.A. § 274), if the text proposed by the Committee had been approved our legislation providing for eight hours and a number of minimum-wage decrees providing double compensation for work in excess of eight hours, would have been rendered unconstitutional. Moreover, the proposed text would have divested the Legislative Assembly of the power to enact laws authorizing work in excess of eight hours, regardless of the extra compensation, whenever special circumstances or emergency were not present.

In the debate which took place on January 26, 1952, delegate Gutiérrez Franqui stated as follows: "If this language is incorporated in the Constitution, the present minimum-wage laws would conflict with this provision and the present minimum-wage decrees would be unconstitutional, inasmuch as they were adopted on the basis of statutes which did not require the existence of special circumstances, and therefore the decrees were issued without the Board making a finding of facts that there existed special circumstances. Hence, it is likely that all the decrees would conflict with the Constitution as not having been promulgated in view of special circumstances. Furthermore, in our medium or our industrialization plan under way, with the shortage of skilled laborers in certain specializations, the proper thing is not to require as a matter of law the existence of special circumstances which might be difficult to be determined by the courts or by the administrative boards, but to use the medium of overtime compensation as far as the Legislature may deem it advisable, without requiring the concurrence of special circumstances. That is the reason and purpose of the amendment." Journal of Sessions of the Constituent Convention, p. 840.

In answer to delegates who wished to incorporate detailed provisions in this section, the same delegate stated in the

course of the afore-mentioned debate that, "I do not believe that it is our mission here to write out statutes either on minimum wage or of any other nature" ... "the position which we wish to take and adopt is that we should not freeze this constitutional provision with the limitations suggested, because I believe that the Legislative Assembly of Puerto Rico should be clothed with power to establish those norms which, within the limitations stated here, it may deem necessary and convenient." *Op. cit.* at 844–45.

■ I. In view of the foregoing, and in answer to our question as to whether § 16 includes traveling salesmen as respects the eight-hour day limitation, we believe, in the first place, that the history of that section reveals that it was not the purpose of the constituents to include traveling salesmen in the said limitation. Specifically: (a) throughout the entire debate in the Constituent Convention on this section it appears clearly that the delegates were aware that the eight-hour working day *was established by law* and that they were elevating that provision to a constitutional rank in order to render it less vulnerable to future legislative interference. (See pp. 840–46 of the Journal of Sessions of the Convention and the Statements made by delegate Padrón Rivera which appear at pp. 886 and 887 of the same document.) (b) The Report of the Bill of Rights Committee expressly indicates that the purpose of § 16 is to establish the rights of "the worker as such." The Committee refers to "the mass of the laboring class which, by reason of special abandonment, has historically been in need of... social protection." The said Report also points out that the rights therein recognized "exist at present and are expressly guaranteed in the existing laws, or are implicitly incorporated in other constitutional provisions," and that "it has been deemed convenient to incorporate them in the Bill of Rights for the purpose of foreclosing possible future vulnerations."

(c) The arguments adduced before the Committee which took cognizance of this matter and those adduced by the delegates before the Constituent Convention proper, confirm the foregoing. (d) The reference to "the workers," to "the laborers," and to "the laboring class" was consistently repeated throughout the proceeding whereby § 16 was formulated. Such proceeding culminated in the text of that section and refers expressly to the "worker."

■ (e) The administrative interpretation as well as the legislative will are agreeable with our decision in this case. The State agencies specialized in dealing in this area of the labor law—the Department of Labor and the Minimum Wage Board—have enforced for over nine years, under the Constitution of Puerto Rico and the said § 16, Mandatory Decree No. 16 and Act No. 379 as respects working hours, in consonance with the point of view herein advanced. The Legislative Assembly has continued in force under the Constitution, during those nine years, the said Act No. 379 which establishes the regular workday and excludes traveling agents from its provisions.

II. In the second place, an examination of § 16, irrespective of its history, also leads to the conclusion that said workday provision does not cover traveling salesmen.

■ We can not construe § 16 literally as urged by the appellant. The term "every employee" used in that section does not mean everyone who works. Taken in that literal fashion, it would apply to executives of private enterprises, to lawmakers, to judges, to chiefs of executive departments of the Government, to the Governor, etc., and would consequently eliminate the fixed salary as a means of compensation in Puerto Rico. Certainly, the Constitution does not require such a result. Apart from the fact that it would be unreasonable or absurd, such a result would not be logical because, as we have seen, there is evidence that that provision was enacted to protect the "laboring masses."

The section says at the beginning, "The right of every employee to choose his occupation freely and to resign therefrom is recognized." It may be easily seen that this provision cannot be taken literally. There is a number of unemployed in Puerto Rico who would like to choose an occupation, but they are unable to do so. Another concept contained in § 16 is "his right to equal pay for equal work." In this connection, the Bill of Rights Committee explains in its Report that this principle should be understood in its historical context without attributing consequences alien to its purpose, on the basis of a denaturing literalism. It adds that it does not presuppose, for example, to render constitutionally impossible the automatic increases for years of service, or vacation with pay to women during pregnancy or nursing, or the special bonuses in consideration of the number of dependents, or pay over the minimum for work of higher type, or for greater production, etc. 21 *Revista Jurídica de la U.P.R.* 26.

The Committee points out its "preference for the interpretation of the language within its historical and social context rather than for the interpretation of the dictionary when it is at variance with the sense of the juridical concept." *Op. cit.* at 11.

■ Like our law, the Federal Minimum Wage-Hour Act excludes traveling salesmen from its maximum work-hour provisions. 29 U.S.C.A. § 213. The American authorities have upheld this exclusion. *Jewel Tea Co.* v. *Williams et al.*, 118 F.2d 202, 208 (1941); *Bradford* v. *Gaylord Products, Inc.*, 77 F. Supp. 1002, 1005 (1948). The cases explain what we all know: the inherent nature of the work of traveling agents requires their exclusion from the eight-hour limitation. Traveling agents are not subject to personal supervision, they go away, usually by car, and the employer has no way of knowing the exact number of hours worked per day. That is why traditionally they have been excluded

from the eight-hour legislation. Such exclusion is a valid and constitutional exercise of the legislative power. Of course, the power of legislative assemblies, state as well as federal, to enact legislation on maximum work hours is no longer questioned. *Bunting* v. *Oregon*, 243 U.S. 426, 61 L. Ed. 830 (1917) ; *United States* v. *Darby*, 312 U.S. 100, 85 L. Ed. 609 (1941) ; *M. Taboada & Co.* v. *Rivera, Com'r*, 51 P.R.R. 246, 260 (1937) ; *Cardona* v. *District Court*, 62 P.R.R. 59, 64 (1943) ; *Chabrán* v. *Bull Insular Line*, 69 P.R.R. 250, 270 (1948).[4]

■ Considering as a whole the origin of § 16, which we have outlined, and construing that section both within its historical context and the present reality, we are of the opinion that the legislative and administrative provisions excluding traveling salesmen from the eight-hour limitation do not violate the said section and are valid.

The judgment rendered by the Superior Court in this case will be affirmed.

---

[4] Those who in this connection would like to review some of the old masters—old but not obsolete—may examine Learned Hand, *Due Process of Law and the Eight-Hour Day* in 21 Harv. L. Rev. 495; Félix Frankfurter, *Hours of Labor and Realism in Constitutional Law* in 29 Harv. L. Rev. 353; and Roscoe Pound, *Liberty of Contract* in 18 Yale L. J. 454.