AMÉRICO D. MIRANDA, INC., antes, hoy MIRANDA & EGUÍA, INC., demandante y recurrida, *v.* ONOFRE FALCÓN, demandado y recurrente, SECRETARIO DE JUSTICIA, interventor.

*Número:* 2.    *Resuelto:* 26 de octubre de 1961.

*A. Figueroa Rivera,* abogado del recurrente; *Rodríguez Ema & Rodríguez Ramón,* abogados de Miranda & Eguía, Inc., recurrida; *Hiram R. Cancio, Secretario de Justicia, Arturo Estrella, Secretario Auxiliar,* y *Edgar S. Belaval, Procurador Auxiliar,* abogados del interventor.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Onofre Falcón, el recurrente en este caso, trabajó como viajante vendedor en el ramo de venta al por mayor para la firma recurrida, a través de toda la isla utilizando para ello un vehículo que le suministraba dicha firma. En un pleito originado mediante una demanda en cobro de dinero radicada por la demandante recurrida contra el aquí recurrente, éste contrademandó reclamando una suma de dinero por alegadas horas extras trabajadas por él. Es materia probada que Falcón trabajaba en su calidad de agente vendedor o viajante vendedor por un sueldo fijo y sin que se hubiese formalizado convenio específico alguno sobre horas de trabajo.

Plantea el recurrente que a pesar de lo dispuesto en el Decreto Mandatorio Núm. 16 de la Junta de Salario Mínimo de Puerto Rico y a pesar de lo dispuesto en la Ley 379 de 15 de mayo de 1948 que establece la jornada legal de trabajo, él tiene derecho a paga adicional por horas extras en virtud de la sección 16 del Artículo II de la Constitución de Puerto Rico. En consecuencia, plantea además que tanto el Decreto Mandatorio Núm. 16 como la Ley 379 son inconstitucionales en lo que a este aspecto se refiere.

El Decreto Mandatorio Núm. 16 fija el salario mínimo, los períodos máximos de labor y demás condiciones de trabajo para los empleados del comercio al por mayor. Título 29, *Reglas y Reglamentos de Puerto Rico,* secciones 245n–271 y siguientes. Dispone dicho decreto en su Art. I-c que los

Artículos II, IV y V-a del mismo "no serán aplicables a los empleados que trabajen en capacidad bona fide como profesionales o viajantes vendedores." El Art. II dispone sobre el salario mínimo en las actividades relacionadas con el comercio al por mayor; el Art. IV dispone sobre los períodos máximos de labor y el Art. V-a sobre el día semanal de descanso. (¹) Como hemos visto el Decreto excluyó a los viajantes vendedores de sus disposiciones sobre salario mínimo y sobre períodos máximos de labor, de modo que el Decreto no sería base suficiente para la reclamación del recurrente.

La Ley 379 de 15 de mayo de 1948, 29 L.P.R.A. secs. 271 y sigtes., como ya dijimos, establece la jornada legal de trabajo en Puerto Rico y dispone lo concerniente a horas regulares de trabajo, horas extras, paga extra por horas extras, nóminas de pago, etc. También esta ley excluye de su ámbito a los agentes viajeros. Dispone dicha Ley 379 que "todo patrono que emplee o permita que trabaje un *empleado* durante horas extras vendrá obligado a pagarle por cada hora extra un tipo de salario igual al doble del tipo convenido para las horas regulares". (Énfasis suplido.) 29 L.P.R.A. sec. 274. Al definir el término "empleado" el mismo estatuto lee como sigue: "Empleado incluye a todo empleado, obrero, jornalero, artesano, trabajador, oficinista, dependiente de comercio y a toda persona empleada mediante salario, sueldo, jornal u otra forma de compensación en cualquier ocupación, establecimiento, negocio o industria, *con excepción de agentes viajeros* y vendedores ambulantes. La palabra "empleado" no incluirá ejecutivos, administradores ni profesionales." (Énfasis suplido.) 29 L.P.R.A. sec. 288. Estas exclusiones han sido sostenidas explícitamente unas veces, implícitamente otras, por este Tribunal en varias ocasiones. *Hull Dobbs Co.* v. *Tribunal*, 82 D.P.R. 77, 85 (1961);

---

(¹) Los citados son los números de los artículos según aparecen en el texto del Decreto publicado por el Departamento del Trabajo, Imprenta del Gobierno, 1952. En *29 R.R.P.R.* corresponden a las secciones 245n–272, 245n–274 y 245n–275(a) respectivamente.

*Doyle* v. *Polypane Packaging Co.*, 80 D.P.R. 224, 229 (1958) ; *Sierra* v. *Long Construction Co.*, 76 D.P.R. 417, 423 (1954) ; *De Arteaga* v. *Club Deportivo*, 73 D.P.R. 444, 449 (1952) ; *Correa* v. *Mario Mercado e Hijos*, 72 D.P.R. 80, 88 (1951). Tampoco procedería la reclamación del recurrente a base de la citada Ley 379 que establece la jornada legal de trabajo.

La Sección 16 del Artículo II de la Constitución de Puerto Rico lee así: "Se reconoce el derecho de todo trabajador a escoger libremente su ocupación y a renunciar a ella, a recibir igual paga por igual trabajo, a un salario mínimo razonable, a protección contra riesgos para su salud o integridad personal en su trabajo o empleo, y a una jornada ordinaria que no exceda de ocho horas de trabajo. Sólo podrá trabajarse en exceso de este límite diario, mediante compensación extraordinaria que nunca será menor de una vez y media el tipo de salario ordinario, según se disponga por ley." 11 L.P.R.A. tomo 1, pág. 191.

¿Incluye esa disposición constitucional a los viajantes vendedores en lo que respecta a la limitación de una jornada de trabajo de ocho horas?

Al iniciarse el proceso constituyente la Escuela de Administración Pública de la Universidad de Puerto Rico organizó un grupo de especialistas y estudiosos de la ciencia política y del derecho constitucional que asesoraría a la Convención Constituyente. Dicho grupo preparó una serie de valiosísimos informes, los cuales fueron sometidos a la Convención Constituyente en los meses de septiembre a diciembre de 1951. Estos informes han sido recogidos en un volumen titulado *La Nueva Constitución de Puerto Rico*.([2]) En el Capítulo II de esa obra, capítulo que está dedicado a la Carta de Derechos, bajo el subtítulo "Los Derechos Relativos al Trabajo" se dice lo siguiente:

"Los derechos a salarios justos, libre elección del trabajo, condiciones equitativas y protección contra el desempleo se jus-

---

([2]) Ediciones de la Universidad de Puerto Rico, 1954.

tifican, como dignos de mención en el documento constitucional, por las mismas razones y con las mismas salvedades que consignamos anteriormente en cuanto al derecho de obtener empleo. *Son bien conocidas las leyes insulares y federales de salario mínimo, normas razonables y otros aspectos de las relaciones del trabajo.*" (Énfasis suplido.) *Op. cit.* pág. 223.

Recomendó el mencionado grupo de asesores que se incluyera en nuestra Constitución una referencia a esos derechos pues fue de opinión que debían incluirse disposiciones en nuestra nueva Carta de Derechos de manera que la Constitución interpretase "adecuadamente la voluntad democrática de los puertorriqueños en el momento actual". Sobre el particular dicho grupo se expresó en la siguiente forma:

"La gente de Puerto Rico ha demostrado persistentemente, tanto en la ideología como en la práctica, que tiene fe en los valores fundamentales de la tradición liberal, en la libertad y dignidad del individuo como último punto de referencia valorativa para la organización social. Ha fortalecido los ideales y las prácticas de la democracia en sus aspectos económicos, políticos y sociales. Hay que reconocerle un esfuerzo admirable por contribuir a la reivindicación de la democracia en cuanto a su capacidad para atender los problemas ocasionados por las fallas del sistema capitalista. La calidad y respetabilidad *de estos logros* exigen disposiciones constitucionales de la misma categoría, incluidas en el preámbulo, en la Carta de Derechos y en todas las partes de la ley fundamental. Será esta la primera Constitución democrática que tengamos en los cuatro siglos y medio de nuestra existencia como comunidad organizada, y tal oportunidad no puede despreciarse." (Énfasis suplido.) *op. cit.* pág. 216.

Puede apreciarse que los autores del trabajo citado al recomendar sobre estos extremos tenían en mente las "bien conocidas leyes insulares y federales" sobre normas razonables y otros aspectos de las relaciones del trabajo y los "logros" alcanzados por los puertorriqueños en el mejoramiento de su democracia.

En nuestra búsqueda del significado de la citada sección es propio que investiguemos qué ideas y propósitos tenían en

mente los constituyentes cuando redactaron y aprobaron la citada sección. En el curso de sus trabajos la Comisión de Carta de Derechos celebró varias vistas públicas. Una de ellas fue dedicada a los derechos del trabajo. La referencia detallada de estas vistas, testimonios y memoriales aparecen en los apéndices del Informe de la Comisión preparados por la Secretaría de la misma. (³)   Del récord de la segunda vista pública, de 26 de octubre de 1951, extractamos lo siguiente. Al comienzo de esa vista el Presidente de la Comisión, Sr. Jaime Benítez dijo, a la página 3:  "Aquí estamos considerando cuáles son, de los derechos de los obreros, aquéllos que juzgamos de tal permanencia, de tal urgencia, de tal carácter decisivo que deben estar salvaguardados en este documento básico inicial del Pueblo de Puerto Rico."

Véase el siguiente diálogo (pág. 37 del récord de la vista) entre los Sres. Lino Padrón Rivera e Hipólito Marcano.

"SEÑOR LINO PADRÓN:  ... El compañero, como líder obrero, yo quiero que me explique porque el movimiento tiene interés, el movimiento obrero en que estos derechos obreros que están escritos en leyes desde hace tiempo y que funcionan en Puerto Rico a virtud de leyes de la Asamblea Legislativa, ¿por qué tiene interés en que eso vaya a la Constitución? ¿Qué diferencia hay entre un derecho obrero en una ley separada de la Asamblea Legislativa y de un derecho obrero escrito en la Constitución?

"SEÑOR MARCANO:  Es la opinión del movimiento obrero y la mía personalmente, que cuando uno garantiza un derecho de esa naturaleza en una ley, ese derecho queda sujeto a la voluntad de 19 senadores y 39 representantes en términos generales, y en términos más prácticos está sujeto a la voluntad del quórum que haya en la Cámara y el Senado en el momento de aprobar la ley y finalmente está sujeto a la aprobación del señor Gobernador.  Es decir, que esa ley con la mayor rapidez puede ser enmendada o derogada.  Ahora, cuando usted garantiza ese derecho en la Constitución, hay mayor protección contra alguien

---

(³) Apéndices mimeografiados y compaginados en Secretaría de Récord, Trámite y Comisiones de la Convención Constituyente, Capitolio de Puerto Rico.

a quien se le ocurra venir a enmendar la Constitución, ya que no será tan fácil enmendarla y acomodarla a sus propios intereses. Pero es fácil pasar una ley o enmendarla.

"SEÑOR PADRÓN RIVERA: ¿Lo que el movimiento obrero persigue es la estabilidad de derechos?

"SEÑOR MARCANO: Estabilidad de derechos."

Al comentar la disposición constitucional que estamos estudiando (Sección 16, Artículo II) el Informe de la Comisión de Carta de Derechos se expresa como sigue: "La Comisión subraya la alta dignidad del esfuerzo humano *y destina esta sección* al señalamiento de los derechos básicos *del trabajador como tal.* Coloca particular énfasis en *aquel grueso de la clase trabajadora que por razón de especial desvalimiento históricamente ha necesitado, aunque no siempre ha recibido, protección social.*" (Énfasis suplido.) *21 Revista Jurídica de la Universidad de P. R., 25.*

Más adelante se dice en el mismo Informe "Los derechos aquí consignados *existen en la actualidad* y están expresamente garantidos en las leyes vigentes o implícitamente contenidos en otras disposiciones constitucionales. Se ha creído conveniente consignarlos en la Carta de Derechos con el fin *de prevenir contra posibles vulneraciones futuras.*" (*op. cit.* pág. 27.) (Énfasis suplido.) Recuérdese que cuando la Constitución estableció mediante esta sección 16 la jornada de ocho horas en el año 1952 ya la misma estaba garantizada por la Ley 379 de 15 de mayo de 1948.

Un ejemplo específico y además dirigido a la sección 16 que aquí estudiamos y que demuestra cuál fue el propósito de la Convención Constituyente al aprobar dicha sección en los términos en que está redactada, es el siguiente. La Comisión de Carta de Derechos recomendó que se estableciese una jornada ordinaria no mayor de ocho horas y expresó que "puede haber *circunstancias especiales o de emergencia* que justifiquen, en determinadas ocasiones, una labor más extensa." (Énfasis suplido.) *op. cit.* 26. La determinación de tales circunstancias especiales quedaría en manos de la

Asamblea Legislativa. El texto propuesto por la Comisión hubiese establecido una jornada inflexible de ocho horas, excepto en casos de circunstancias especiales o de emergencia. Este requisito de circunstancias especiales o de emergencia fue objeto de preocupación y de deliberación por parte de los constituyentes. Como la legislación vigente para la fecha en que se redactaba nuestra Constitución, como ya hemos visto, permitía el trabajar en exceso de ocho horas mediante paga extra y sin que concurriesen circunstancias especiales o de emergencia (Ley 379 de 15 de mayo de 1948, 29 L.P.R.A. sec. 274) de haberse aprobado el texto propuesto por la Comisión hubiese resultado que nuestra legislación de ocho horas y un número de decretos de salario mínimo que establecían paga a tipo doble por trabajo en exceso de ocho horas, hubiesen resultado inconstitucionales. Además, el texto propuesto hubiese restado facultad a la Asamblea Legislativa para aprobar leyes autorizando trabajo en exceso de ocho horas, aunque fuese mediante paga extra, cuando no concurriesen circunstancias especiales o de emergencia.

En el debate que tuvo lugar el 26 de enero de 1952 el delegado Gutiérrez Franqui se expresó como sigue: "Si se deja este lenguaje en la Constitución las leyes actuales sobre Salario Mínimo, estarían en conflicto con esta disposición y los decretos actuales de salario mínimo resultarían inconstitucionales, ya que fueron adoptados a base de estatutos que no exigían la concurrencia de circunstancias especiales, y por lo tanto los decretos fueron hechos sin que la Junta llegara a una conclusión de hechos de que existían circunstancias especiales; por tanto lo más probable es que todos los decretos resultarían en conflicto con la Constitución por no haber sido promulgados en atención a circunstancias especiales. Además, en nuestro medio o nuestro plan de industrialización en desarrollo, con nuestra escasez de obreros diestros en ciertas especializaciones, lo adecuado no es exigir como materia de derecho la concurrencia de circunstancias especiales que pu-

dieran ser de difícil determinación por los tribunales o por las Juntas Administrativas, sino usar el medio de la compensación adicional, hasta el extremo que la Legislatura lo estime conveniente, sin exigir la concurrencia de circunstancias especiales. Esa es la razón y el propósito de la enmienda." *Diario de Sesiones de la Convención Constituyente, pág. 840.*

Contestando a delegados que querían incorporar en esta sección disposiciones detalladas, en el curso del mismo debate antes mencionado el mismo delegado expresó "[N]o creo que es nuestra misión aquí escribir estatutos, ni de salario mínimo, ni de ninguna otra naturaleza" . . . "la posición que deseamos asumir y adoptar es la de que no debemos congelar esta disposición constitucional con las limitaciones sugeridas, por entender que debe dejarse a la Asamblea Legislativa de Puerto Rico la facultad de ir estableciendo esas normas, que dentro de las limitaciones aquí expuestas, pueda creer necesarias y conveniente." *op. cit.* pág. 844–845.

I—Visto lo anterior y contestando el interrogante que nos planteáramos en el sentido de si la sección 16 incluye a los viajantes vendedores en lo que respecta a la limitación de una jornada de trabajo de ocho horas, entendemos, en primer lugar, que el historial de dicha sección demuestra que no fue el propósito de los constituyentes que la mencionada limitación incluyese a los viajantes vendedores. Puntualizando: (a) A través de todo el debate sobre esa sección en la Convención Constituyente surge con claridad que los señores delegados estaban conscientes de que la jornada de ocho horas *estaba establecida por ley* y de que estaban elevando a rango constitucional ese precepto para protegerlo de posibles vulneraciones en legislaturas posteriores. (Véanse las páginas 840 a 846 del Diario de Sesiones de la Convención y lo expresado por el delegado Padrón Rivera que aparece en las páginas 886 y 887 el mismo documento.) (b) El Informe de la Comisión de Carta de Derechos expresamente

indica que esa sección 16 está destinada al señalamiento de los derechos "del trabajador como tal." Se refiere la Comisión a "aquel grueso de la clase trabajadora que por razón de especial desvalimiento históricamente ha necesitado . . . protección social." También señala dicho Informe que los derechos allí consignados "existen en la actualidad y están expresamente garantidos en las leyes vigentes o implícitamente contenidos en otras disposiciones constitucionales" y que "se ha creído conveniente consignarlos en la Carta de Derechos con el fin de prevenir contra posibles vulneraciones futuras."

(c) Los pronunciamientos hechos ante la Comisión que entendió en esta materia y aquellos hechos por los delegados ante la propia Convención Constituyente confirman lo dicho. (d) A lo largo del proceso mediante el cual se formuló la sección 16 se repite consistentemente la referencia a "los trabajadores", a "los obreros", y a "la clase trabajadora". Dicho proceso culminó en el propio texto de dicha sección 16 y el cual se refiere expresamente al "trabajador".

(e) Tanto la interpretación administrativa como la voluntad legislativa son consonantes con lo que aquí estamos resolviendo. Los organismos especializados del Estado para bregar en esta área del derecho laboral—el Departamento del Trabajo y la Junta de Salario Mínimo—han administrado por más de nueve años bajo la Constitución de Puerto Rico y bajo dicha sección 16, el Decreto Mandatorio núm. 16 y la Ley núm. 379 sobre horas de trabajo, en armonía con el punto de vista aquí expresado. La Asamblea Legislativa ha mantenido durante esos nueve años bajo la Constitución la mencionada Ley 379, que establece la jornada regular de trabajo y la cual excluye a los agentes viajeros de sus disposiciones.

II. En segundo lugar, un examen de dicha sección 16, independiente de su historial, también nos hace concluir que la citada cláusula sobre jornada de trabajo no cubre a los viajantes.

■ No podemos, como propone el recurrente, interpretar literalmente la sección 16. La frase "todo trabajador" utilizada en esa sección no quiere decir todo el que trabaja. Entendida en esa forma literal se aplicaría a los ejecutivos de las empresas privadas, a los legisladores, a los jueces, a los jefes de los departamentos ejecutivos del gobierno, al Gobernador, etc., y por consiguiente eliminaría el sueldo fijo como manera de compensación en Puerto Rico. Ciertamente la Constitución no nos exige ese resultado. Aparte de lo irrazonable o absurdo que sería, el mismo no procede porque, como hemos visto, hay prueba de que esa cláusula se redactó para proteger a la "masa trabajadora".

La sección comienza diciendo "Se reconoce el derecho de todo trabajador a escoger libremente su ocupación y a renunciar a ella." Es fácil ver que esa disposición no puede tomarse literalmente. En Puerto Rico existe un número de desempleados que les gustaría escoger una ocupación, pero no le es dable hacerlo. Otro concepto que contiene la sección 16 es el de "recibir igual paga por igual trabajo." Sobre esto la Comisión de Carta de Derechos explica en su Informe que dicho principio debe entenderse en su contexto histórico sin atribuírsele consecuencias extrañas a su propósito, a base de un literalismo desnaturalizador. Añade que no supone, por ejemplo, imposibilitar constitucionalmente los aumentos automáticos por años de servicio, o las vacaciones con sueldo a mujeres en época de gravidez y lactancia, o las bonificaciones especiales en consideración al número de dependientes o el pago sobre el mínimo por trabajo superior o por mayor producción, etc. *21 Revista Jurídica de la U.P.R. 26.*

Señala la misma Comisión su "preferencia por la interpretación del lenguaje dentro de su contexto histórico y social más bien que por la interpretación del diccionario cuando ésta está reñida con el sentido del concepto jurídico." *op. cit.* 11.

746

■ Igual que nuestra ley, la ley federal de horas y salarios excluye a los viajantes de sus disposiciones sobre horas máximas de trabajo. *29 USCA 213*. La jurisprudencia norteamericana ha sostenido esa exclusión. *Jewel Tea Co.* v. *Williams et al.*, 118 F.2d 202, 208 (1941); *Bradford* v. *Gaylord Products Inc.*, 77 F. Supp. 1002, 1005 (1948). Explican los casos lo que todos conocemos; la propia naturaleza del trabajo de los viajantes hace que tengan que ser excluidos de la limitación de ocho horas. Los viajantes trabajan sin supervisión directa, salen de viaje, generalmente en automóvil, y el patrono no puede constatar el número exacto de horas que trabajan al día. Por eso tradicionalmente se les ha excluido de la legislación de ocho horas. Dicha exclusión es un ejercicio válido y constitucional de poder legislativo. Desde luego, la facultad de las asambleas legislativas, tanto de las estatales como de la federal, para aprobar legislación sobre horas máximas de trabajo ya no se pone en duda. *Bunting* v. *Oregon*, 243 U.S. 426, 61 L. ed. 830 (1917); *U. S.* v. *Darby*, 312 U.S. 100, 85 L. ed. 609 (1941); *Taboada* v. *Rivera Martínez*, 51 D.P.R. 253, 268 (1937); *Cardona* v. *Corte*, 62 D.P.R. 61, 66 (1943); *Chabrán* v. *Bull Insular Line*, 69 D.P.R. 269, 291 (1948).[4]

■ Considerando en conjunto el origen de la sección 16, el cual dejamos reseñado, e interpretando dicha sección tanto dentro de su contexto histórico como dentro de la realidad presente, somos de opinión que las disposiciones legislativas y administrativas que excluyen a los viajantes vendedores de la limitación de ocho horas diarias de trabajo, no transgreden la citada sección y son válidas.

*Se confirmará la sentencia del Tribunal Superior dictada en este caso.*

---

[4] Los que sobre el particular deseen revisitar algunos de los viejos maestros—viejos pero no obsoletos—pueden ver Learned Hand, "Due Process of Law and the Eight-Hour Day" en *21 Harvard Law Review 495;* Felix Frankfurter, "Hours of Labor and Realism in Constitutional Law" en *29 Harvard Law Review 353;* y Roscoe Pound, "Liberty of Contract" en *18 Yale Law Journal 454.*