AUTORIDAD DE COMUNICACIONES DE PUERTO RICO, peticiona-
ria, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE
SAN JUAN, HON. J. RIVERA BARRERAS, JUEZ, demandado;
LUIS FRANCISCO DELGADO, interventor.

*Número:* C-62–32    *Resuelto:* 27 de diciembre de 1962

*Martín Avilés Bracero, J. Paniagua Serracante,* abogados de la peticionaria; *José A. Suro* y *Antonio José Amadeo,* abogados del interventor; *J. B. Fernández Badillo, Procurador General, Rodolfo Cruz Contreras, Procurador General Auxiliar,* y *Jenaro Marchand, Procurador General Auxiliar,* en representación del Estado Libre Asociado de Puerto Rico y de los Municipios de San Juan, Vega Baja y Barranquitas; *Ramón Cancio,* abogado de la Autoridad de Acueductos y Alcantarillados de Puerto Rico, abogados de los *amici curiæ.*

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Para fomentar el bienestar general y aumentar el comercio y la prosperidad, la Asamblea Legislativa de Puerto Rico creó mediante la Ley Núm. 212 de 12 de mayo de 1942, 27 L.P.R.A. sec. 291 y ss., un cuerpo corporativo y político "que constituirá una corporación pública e instrumentalidad gubernamental del Estado Libre Asociado de Puerto Rico con el nombre de 'Autoridad de Comunicaciones de Puerto Rico'." En términos generales, los propósitos que animaron la creación de dicha agencia fueron los de desarrollar y mejorar, poseer, funcionar y administrar cualquiera y todos los

tipos de comunicaciones. Expresamente se le concedió facultad para "nombrar aquellos funcionarios, agentes y *empleados* y conferirles aquellas facultades, imponerles aquellos deberes y fijarles, cambiarles y pagarles aquella compensación por sus servicios que la Autoridad determine" (Sec. 6(m), 27 L.P.R.A. sec. 296(m), y respecto a los nombramientos, separaciones, ascensos, traslados, cesantías, reposiciones, suspensiones, licencias y cambios de categoría, título o remuneración de los mismos se le instruyó para que se adoptara "un plan general análogo" al vigente para los empleados del gobierno estatal al amparo de la Ley de Personal (Sec. 7, 27 L.P.R.A. sec. 297).[1]

En 1 de julio de 1949, el Director de la Oficina de Personal aprobó la solicitud presentada por la Autoridad de Comunicaciones para que se incluyera a los empleados de dicha agencia en el Servicio por Oposición.[2] Desde esa fecha los empleados de la Autoridad de Comunicaciones se integraron al sistema de personal para los empleados del Gobierno, con los derechos inherentes a tal condición, como los de permanencia, participación en el plan de retribución uniforme, y otros.

La subdivisión 7 de las Reglas de Personal promulgadas por la Junta de Personal y aprobadas por el Gobernador de Puerto Rico en 9 de septiembre de 1952, intitulada "Horas de Trabajo y Reglamentación de Licencias," dispone en la parte pertinente como sigue:

---

[1] El señor Manuel A. Pérez, Director de la Oficina de Personal en 1949, indicó que esta disposición respondía a la conveniencia de conceder "la flexibilidad necesaria para que la Autoridad pudiera organizarse y comenzar a funcionar," pero que evidentemente se contempló el establecimiento de un sistema de méritos (Exh. 5).

[2] La Sec. 8 de la Ley de Personal, Ley Núm. 345 de 12 de mayo de 1947, 3 L.P.R.A. sec. 648, disponía en su parte pertinente, como sigue:

"Cualquier agencia, corporación pública o subdivisión política comprendida en el Servicio Exento o en el Servicio sin Oposición podrá, a solicitud propia y con la aprobación del Director ser incluida en el Servicio por Oposición en cuanto a la totalidad o cualquier parte de sus funciones, programas o actividades. . . ."

Artícuio 111 (3 R.&R.P.R. Sec. 647–111). *"Horas de Trabajo*

"Lu jornada semanal de trabajo para los empleados en el Servicio por Oposición y el Servicio sin Oposición será no menor de 37½ horas ni mayor de 48 horas sobre la base de 5 ó 6 días laborables, *pero en ningún caso la jornada diaria excederá de 8 horas.* Cada autoridad nominadora establecerá, dentro de los límites anteriores la duración de la jornada semanal para sus empleados y fijará las horas diarias de trabajo de los mismos. Asimismo, cada autoridad nominadora adoptará la reglamentación que estime conveniente para llevar constancia de la asistencia de sus empleados, de acuerdo con el horario de trabajo establecido por ella, y notificará dicha reglamentación al Director "

Artículo 112 (3 R.&R.P.R. Sec. 647–112). *"Tiempo extra*

"Ei programa de trabajo de cada agencia se formulará de tal manera que se reduzca al mínimo la necesidad de trabajo en exceso de las horas regulares establecidas para los empleados de cada agencia. Cuando por necesidad del servicio se requiera a cualquier empleado *que trabaje más de 48 horas en una semana; o que trabaje en alguno de los días feriados enumerados en esta subdivisión, se le concederá licencia compensatoria por todas las horas trabajadas en exceso del límite semanal de 48 o por todas las horas trabajadas en días feriados.* La autoridad nominadora podrá conceder licencia compensatoria a aquellos empleados a quienes intermitentemente se requiera que trabajen en exceso de la jornada diaria aunque las horas trabajadas por dichos empleados no excedan de la jornada semanal de 48. La licencia compensatoria se concederá en la fecha más próxima posible después del trabajo realizado en exceso de la jornada semanal o diaria. En ningún caso se concederá licencia compensatoria que en total exceda de treinta (30) días durante cualquier año natural." (Bastardillas nuestras.)

La anterior Regla XLIX del Reglamento de Servicio Civil. (³) sobre horas de trabajo aprobado por el Gobernador de Puerto Rico en 7 de mayo de 1942, y vigente desde el día 11 de mayo siguiente, disponía como sigue:

---

(³) En relación con los Artículos 111 y 112 del Reglamento de la Junta de Personal y la anterior Regla XLIX de la Comisión de Servicio Civil, véase la opinión concurrente emitida por el Juez Asociado señor Belaval en *Rullán* v. *Secretario de Hacienda,* 78 D.P.R. 521, 522–536 (1955).

"Será deber del jefe de cada departamento y de los demás servicios públicos del Gobierno Insular de Puerto Rico requerir de todos los empleados, de cualquier grado o clase, en los varios departamentos y oficinas, no menos de siete horas y media diarias de trabajo, sin incluir el tiempo para almorzar y excluyendo los sábados, domingos, días festivos, y los días de licencia concedidos de acuerdo con la Regla XXXIX, pero el jefe de cualquier departamento u otro servicio podrá aumentar las horas de trabajo que aquí se especifican para cualquiera o para todos los empleados en su oficina cuando, en su opinión, las necesidades del servicio público en el negociado que estuviere bajo su dirección requirieren dicho aumento."

Luis Francisco Delgado comenzó a prestar servicios como capataz de conservación de edificios a la Autoridad de Comunicaciones desde el día 1 de noviembre de 1948. Al acogerse dicha agencia a las disposiciones de la Ley de Personal se le confirmó en dicho puesto como empleado regular por haber prestado servicios satisfactorios durante un período de seis meses con anterioridad al 1 de julio de 1949. Prestó el correspondiente juramento de fidelidad y toma de posesión del empleo y fue objeto de la calificación sobre eficiencia prescrita por las normas de la referida Oficina de Personal.

En 18 de noviembre de 1960 Delgado presentó una querella contra la instrumentalidad mencionada en reclamación de horas extraordinarias trabajadas durante un período de diez años. Alegó que había prestado servicios durante tres horas diarias en exceso de ocho dentro de un período de veinticuatro horas consecutivas, e invocó la Ley Núm. 10 de 14 de noviembre de 1917 (32 L.P.R.A. secs. 3101–3113), [4] en cuanto se refiere al aspecto procesal de la reclamación, y las Leyes Núm. 379 de 15 de mayo de 1948 (29 L.P.R.A. sec.

[4] Esta ley de procedimiento para las reclamaciones de salarios fue derogada y sustituida por la Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. (Ap. 1961) secs. 3118–3132.

271 y ss.) y Núm. 96 de 26 de junio de 1956 (29 L.P.R.A. (Ap. 1961) sec. 245 y ss.),([5]) en cuanto se refiere a lo sustantivo.

La parte demandada adujo en su contestación varias defensas especiales([6]) que en esencia plantean si, siendo el querellante un empleado de una agencia acogida a la reglamentación de la Oficina de Personal que hemos transcrito anteriormente, le son aplicables las disposiciones de la Ley Núm. 379, *supra*, sobre la jornada de trabajo. El tribunal de instancia declaró sin lugar las defensas interpuestas, y para revisar su resolución expedimos auto de certiorari.

*Lebrón* v. *Servicio de Acueductos*, 68 D.P.R. 1 (1948) y *Tulier* v. *Autoridad de Tierras*, 70 D.P.R. 267 (1949), consideraron la procedencia de reclamaciones por horas extras trabajadas por empleados de dos agencias del Gobierno Estatal. Sin embargo, fueron resueltos tomando en cuenta disposiciones de las leyes creadoras de las instrumentalidades demandadas: en *Lebrón*, se dijo que nada había en la ley creándola que eximiera al Servicio de Acueductos del cum-

---

([5]) La mención en la querella de la Ley de Salario Mínimo de 1956 se refiere al período de 10 años por los cuales se puede entablar la reclamación. Sec. 32, 29 L.P.R.A. (Ap. 1961) sec. 246(d).

([6]) Dichas defensas especiales, copiadas textualmente leen como sigue:

"Que la querella no aduce hechos constitutivos de causa de acción alguna en favor del querellante y en contra de la querellada.

"Que el querellante recibió oficialmente nombramiento administrativo el primero de julio de 1949 en la Autoridad de Comunicaciones de Puerto Rico para ocupar el puesto por oposición de Capataz de Conservación de Edificios, debidamente clasificado y retribuido de acuerdo con la Ley y el Reglamento de la Oficina de Personal del Estado Libre Asociado de Puerto Rico.

"Que desde el primero de julio de 1949 hasta el presente todos los empleados y funcionarios de la querellada, inclusive el querellante, por ministerio de la Ley y por propia iniciativa fueron incluidos en la Oficina de Personal del Gobierno de Puerto Rico y por consiguiente, son empleados y funcionarios públicos bajo la jurisdicción de dicha ley y Reglamento en todo lo que concierne a condiciones de trabajo en general.

"Que el status legal del querellante como empleado público está sujeto a la Ley y Reglamentación de la Oficina de Personal del Estado Libre

plimiento de las leyes reguladoras de los salarios y condiciones de trabajo de los obreros, y que, por el contrario, la Sec. 5(b) de la Ley Núm. 40 de 1 de mayo de 1945,([7]) al efecto de que "[l]os tipos de salarios y otros términos y condiciones de empleo en el Servicio no serán de menor remuneración, ni en general menos favorables a los intereses de los empleados que los salarios, términos y condiciones prevalecientes en empleos análogos en la comunidad en que se desempeñan tales empleos", contenía un mandato expreso en cuanto a que los tipos de salarios y los términos y condiciones de empleo se ajustaran a los requisitos de las leyes vigentes, y entre ellas de la Ley Núm. 49 de 7 de agosto de 1935, que establecía la jornada de trabajo; en *Tulier*, —se adoptó el mismo *ratio decidendi*, o sea, se examinó la ley creadora de la Autoridad de Tierras para concluir que nada en ella la eximía de observar y cumplir con la legislación sobre jor-

Asociado de Puerto Rico, y dicho querellante no ha agotado todos los recursos a su alcance por la vía administrativa para sustanciar su caso ante la Junta de Personal y demás organismos administrativos con jurisdicción sobre la materia, en caso de que fuere legítima y cierta su reclamación.

"Que siendo el status legal del querellante el de un empleado regular, permanente y clasificado en el Servicio de Oposición bajo la Ley número 345 aprobada el 12 de mayo de 1947, según fuera posteriormente enmendada, y los reglamentos de la Junta de Personal, no son aplicables a este caso las disposiciones de la Ley Número 10 de 14 de noviembre de 1917, según enmendada, ni la Ley Número 379 de 15 de mayo de 1948, según enmendada, ni la Ley de Salario Mínimo aprobada el 26 de junio de 1956, según han sido invocadas por el querellante en el párrafo primero de la querella.

"Que bajo todas las circunstancias de este caso, el querellante tampoco tiene causa de acción alguna a su favor para amparar su reclamación en consideración de lo dispuesto en el Reglamento Número 13 aprobado por la Junta de Salario Mínimo de Puerto Rico, según éste ha sido últimamente enmendado."

([7]) Al reenactarse la ley sobre el Servicio de Acueductos y Alcantarillados mediante la Ley Núm. 163 de 3 de mayo de 1949 (Leyes, pág. 431, 22 L.P.R.A. sec. 141 et seq.) se eliminó esta Sección 5(b), así como la 5(a) que establecía que las disposiciones de las leyes de Servicio Civil eran aplicables a todos los cargos en la agencia mencionada. Ya para esta fecha—1949—el Servicio de Acueductos había solicitado y obtenido su inclusión en el sistema de la Ley de Personal.

nada de trabajo, y que más bien, en virtud de los Arts. 65(b) y 67 de la Ley Núm. 26 de 12 de abril de 1941, 28 L.P.R.A. secs. 463 y 482, dispositivos de que los trabajadores percibirán por cada día de trabajo el jornal o salario corriente prevaleciente en la región o que hubiese sido estipulado por ley, y que los trabajadores, en ciertos casos, seguirán devengando los beneficios como si la finca estuviera bajo la administración de un arrendatario, evidenciaban la intención de que se cumpliera con la legislación sobre horas y salarios.(8)    En ambos casos la cuestión realmente planteada era si las agencias referidas estaban comprendidas dentro de la definición de empresa comercial, industrial o agrícola con fines de lucro, contenida en la Ley Núm. 49 de 1935, *supra*, idéntica a este respecto al Art. 16 de la ley vigente sobre jornada de trabajo, Ley Núm. 379 de 15 de mayo de 1948, 29 L.P.R.A. sec. 285.    No se planteó ni resolvió, por tanto, el punto básico que ahora se levanta, o sea, si el hecho de que la agencia se haya colocado bajo la reglamentación aprobada por la Ley de Personal excluye *ipso jure* la aplicación de la legislación sobre horas máximas y extraordinarias de labor.    ■

Antes de entrar a considerar este planteamiento crucial, es pertinente advertir que la ley creadora de la Autoridad de Comunicaciones no contiene disposiciones similares a la Sec. 5(b) de la ley original del Servicio de Acueductos ni a los Arts. 65(b) y 67 de la Ley de Tierras. Las únicas referencias sobre la fijación de compensación aparecen en la Sec. 6m, *supra*, que transcribimos en el párrafo inicial de esta opinión, y en la oración final de la sección 7(a), 27 L.P.R.A. sec. 297, al efecto de que la Autoridad estará sujeta a las disposiciones de la Ley Núm. 8 de 5 de abril de 1941, sobre salario mínimo.    No podemos, por tanto, utilizar

---

(8) Con excepción de cierto número limitado de empleados de oficina, la Autoridad de Tierras—especialmente en cuanto se refiere a sus obreros de campo y factorías—no ha estado acogida al sistema de la Ley de Personal.

el razonamiento empleado en los casos de *Lebrón* y *Tulier* para disponer del presente recurso.

La Ley Núm. 379 establece que son horas regulares de trabajo ocho horas durante cualquier período de veinticuatro horas consecutivas, cuarenta y ocho horas durante cualquier semana y doscientas ocho horas durante cualquier mes (Art. 3, 29 L.P.R.A. sec. 272); que son horas extras, entre otras, las trabajadas en exceso de la jornada regular (Art. 4, 29 L.P.R.A. sec. 273); y, que *todo patrono* que emplee o permita que un empleado trabaje horas extras vendrá obligado a compensarle por cada hora extra un tipo de salario igual al doble del tipo convenido para las horas regulares (Art. 5, 29 L.P.R.A. sec. 274). El párrafo final del Art. 16, 29 L.P.R.A. sec. 285, excluye de la aplicación de las disposiciones citadas a los empleados del gobierno estatal, de los gobiernos municipales, del Gobierno de la Capital, y de las agencias o instrumentalidades de dichos gobiernos, con excepción de aquellas agencias o instrumentalidades que se dediquen a empresas agrícolas, industriales, comerciales o de *servicio público.* No cabe duda que el querellante presta servicios a una agencia que se dedica a una empresa de servicio público, y que, por tanto, está cubierto por la legislación local sobre la jornada de trabajo, a menos que la actuación de la Autoridad de Comunicaciones al ingresar en el Servicio por Oposición provisto por la Ley de Personal tenga el efecto legal que le atribuye la recurrente de inhibir *ipso jure* la aplicación de la ley mencionada. (⁹)

Delimitando claramente la cuestión planteada deseamos señalar que la reglamentación adoptada por la Junta de Personal no tiene el alcance que parece atribuírsele de privar

---

(⁹) La Ley Núm. 142 de 30 de junio de 1961, 29 L.P.R.A. (Ap. 1961) secs. 481–499, a la cual aludiremos posteriormente, y la Ley Núm. 67 de 20 de junio de 1962 (Leyes, pág. 151), tuvieron el efecto de excluir *a todos* los empleados de la Autoridad de Comunicaciones del Servicio por Oposición provisto por la Ley de Personal.

a un empleado público de reclamar horas extraordinarias por servicios prestados. Todo cuanto estatuye es una forma especial para la compensación de estas horas extras, o sea, mediante licencia compensatoria. La explicación para esta medida obedece sin duda a las obvias limitaciones presupuestales dentro de las cuales se tiene que desarrollar la obra de gobierno y a la imposibilidad de predecir cuándo las necesidades del servicio público requerirán el trabajo de horas extras. Obsérvese que el Art. 111 del Reglamento de Personal, *supra*, indica que "en ningún caso la jornada diaria excederá de 8 horas," y que en el Art. 112, *supra*, se hace referencia a las horas trabajadas en exceso de 48 horas a la semana o en los días feriados. Realmente, hay una perfecta concordancia entre la jornada de trabajo que define la Ley Núm. 379 y las disposiciones reglamentarias vigentes de la Oficina de Personal; el derecho del empleado a recibir compensación adicional por labor extraordinaria está reconocido plenamente. Advertimos que esto responde a la deferencia que merece el mandato constitucional contenido en la Carta de Derechos, párrafo 16 del Art. II, 1 L.P.R.A. págs. 191–192, que entre los derechos de los empleados consagra el de que la jornada ordinaria no exceda de ocho horas de trabajo, y expresamente preceptúa que "[s]ólo podrá trabajarse en exceso de este límite diario, mediante compensación extraordinaria que nunca será menor de una vez y media el tipo de salario ordinario, según se disponga por ley." Y como hemos visto, la ley sobre la materia estatuye en términos generales el pago de un tipo doble.

Durante los debates ocurridos en el seno de la Convención Constituyente no se planteó ni discutió en momento alguno la necesidad de excluir a los empleados públicos de la norma constitucional mencionada. Las discusiones giraron exclusivamente sobre la necesidad de exigir la presencia de circunstancias especiales que justificaran el trabajo de ho-

ras extras. ([10])    Si se atiende al propósito de esta disposición —José Enrique Rodó la resume en forma inigualable en El Mirador de Próspero([11]) en las siguientes palabras: "Fúndase esa reinvindicación en la necesidad de proporcionar el esfuerzo a la medida de la resistencia normal de la salud, y en el derecho de disponer, fuera de la tarea obligatoria, de algún tiempo de reposo de espíritu o de actividad personal y libre"—se comprenderá inmediatamente que no se justificaba un trato distinto en el caso de los empleados del gobierno.    Cfr. Art. 16 de la Ley de la Policía de Puerto Rico, Ley Núm. 77 de 22 de junio de 1956, 25 L.P.R.A. (Ap. 1961) sec. 2210 y la disposición correspondiente del Reglamento de la Policía, 25 R.&R.P.R. sec. 221d-20.

Esta situación contrasta con la relativa al derecho a organizarse y a negociar colectivamente a que se refiere el párrafo 17 de la Carta de Derechos, L.P.R.A. Vol. I., pág. 192, que lo reconoce a los empleados de "agencias o instrumentalidades del gobierno que funcionen como empresas o negocios privados."    A este respecto se aclaró repetidamente por el delegado señor Luis Negrón López que al referirse al funcionamiento como empresas o negocios privados no se alude a la naturaleza del negocio o empresa *sino a la norma que rige el personal de la misma;*([12]) de forma que si una agencia o instrumentalidad estaba comprendida dentro de la Oficina de Personal, sus empleados no podrán organizarse ni negociar respecto a las condiciones de trabajo que regirían sus relaciones con la empresa.    Precisamente esa era la situación de los empleados de la Autoridad de Comunicaciones hasta la aprobación de la Ley Núm. 142 de 30 de junio de 1961, 29 L.P.R.A. (Ap. 1961) secs. 481–499, mediante la cual se confirió jurisdicción a la Junta de Relaciones del Tra-

---

([10]) *Diario de Sesiones de la Convención Constituyente*, Equity Publishing Co., 1961, págs. 2247 a 2265 y 2277 a 2280.

([11]) Obras Completas, Ed. Aguilar (1957), pág. 642.

([12]) *Diario de Sesiones de la Convención Constituyente*, Equity Publishing Co., 1961, págs. 1612–1614 y 1618.

bajo sobre aquellas instrumentalidades corporativas que originalmente estaban incluidas en el Servicio Exento pero que, a solicitud propia o en cualquier otra forma ingresaron en el Servicio por Oposición, bajo las disposiciones de la Ley de Personal, para que los empleados y trabajadores de dichas instrumentalidades pudieran ejercer plenamente su derecho a organizarse y a negociar colectivamente por mediación de representantes de su propia y libre elección. [13] ■

La reglamentación de la Junta de Personal no tiene, por tanto, el efecto de inmunizar al gobierno o a la agencia o instrumentalidad de que se trate, de una reclamación por horas extraordinarias trabajadas por sus empleados. Solamente establece una forma de pago—mediante licencia compensatoria—que es consistente con las disposiciones de la legislación sobre jornada de trabajo. Actuó correctamente el tribunal de instancia al desestimar, como cuestión de derecho, las defensas planteadas. Ello no impide, sin embargo, que la parte querellada establezca en su día que cualquier labor extraordinaria prestada por el querellante fue oportunamente satisfecha mediante la concesión de licencia compensatoria, o pago en efectivo. [14]

En cuanto al período anterior al *9 de septiembre de 1952* cubierto por la querella, la regla de la Comisión de Servicio Civil entonces vigente, nada disponía en cuanto al pago de horas extras mediante la concesión de licencia compensatoria. Siendo aplicable la Ley Núm. 379 a los empleados de la Au-

---

[13] Esta ley se complementa con la Núm. 67 de 20 de junio de 1962 (Leyes, pág. 151). Para la historia legislativa de la Núm. 142, véase, *Diario de Sesiones*, 1961, págs. 1422-1424; y, de la Núm. 67, véase, *Diario de Sesiones*, 1962, págs. 845-846 y 1520-1521.

[14] En la resolución del tribunal a quo se hace referencia al hecho de que a pesar de estar acogida a la reglamentación de la Oficina de Personal, se presentaron nóminas de las cuales aparece que la Autoridad pagó horas extras a varios empleados. Esto se explica fácilmente si se considera la naturaleza de la labor que realiza la gran mayoría de los empleados—telegrafistas, telefonistas, reparadores de líneas, etc.—que normalmente no facilita el prescindir de sus servicios mediante la concesión de licencia compensatoria.

toridad de Comunicaciones, procede que se compensen a tipo doble las horas extras que se establezca por la prueba fueran trabajadas.

*Se anulará el auto expedido y se confirmará la resolución dictada por el Tribunal Superior, Sala de San Juan, en 4 de abril de 1962.*

EN MOCIÓN DE RECONSIDERACIÓN

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

San Juan, Puerto Rico, a 18 de diciembre de 1963

Tanto la peticionaria, Autoridad de Comunicaciones de Puerto Rico, como el Estado Libre Asociado y los municipios de San Juan, Vega Baja y Barranquitas, y la Autoridad de Acueductos y Alcantarillados de Puerto Rico, como *amici curiæ*, han solicitado la reconsideración de nuestro dictamen y opinión en este caso de 27 de diciembre de 1962.

Luego de detenida consideración de las razones aducidas por los comparecientes en apoyo de dicha reconsideración, concluimos que procede aclarar el alcance preciso de nuestro anterior dictamen.

El interventor reclama compensación por horas extras trabajadas por él en su empleo con la peticionaria desde el 17 de noviembre de 1950 de acuerdo con las disposiciones de la Ley Núm. 379 de 15 de mayo de 1948 (29 L.P.R.A. secs. 271–288), que regula la jornada de trabajo en Puerto Rico y provee compensación adicional por trabajo realizado durante horas en exceso de las horas regulares de trabajo prescritas por dicha ley. La peticionaria adujo ciertas defensas especiales, en síntesis que el interventor ocupaba un puesto por oposición en la Autoridad de Comunicaciones de Capataz de Conservación de Edificios desde julio 1 de 1949, clasificado y retribuido de acuerdo con la Ley de Personal y las Reglas de Personal del Estado Libre Asociado de Puerto Rico, y por consiguiente siendo el interventor un empleado

público regular, permanente y clasificado en el Servicio por Oposición bajo la Ley de Personal no le aplican las disposiciones de la Ley Núm. 379. ■■■

Nos reafirmamos en que el interventor tiene derecho a recibir licencia compensatoria de acuerdo con los términos de los Arts. 111 y 112 del Reglamento de Personal (3 R.& R.P.R. secs. 647-111 y 647-112), a partir de 9 de septiembre de 1952 cuando entraron en vigor estas dos reglas, pero aclaramos que por virtud de la aprobación de la solicitud para incluir a los empleados de la peticionaria en el Servicio por Oposición, el interventor, al igual que los demás empleados de la peticionaria, quedaron excluidos del ámbito de la citada Ley Núm. 379. Esta ley reglamenta la jornada de los trabajadores con ciertas excepciones entre las cuales se incluyeron los empleados del gobierno, pero no así a los de agencias e instrumentalidades como la peticionaria, mientras que la Ley de Personal tiene por propósito reglamentar el servicio público. Se trata, pues, de dos cuerpos de ley que cubren dos distintas y definidas clases de personal. Aunque la Ley de Personal fue aprobada en 1947, o sea con anterioridad a la referida Ley Núm. 379, esta última no derogó la Sec. 8 de aquélla, ni expresa ni implícitamente, y la misma continuó vigente con toda efectividad de manera que el acto de incluir a los empleados de la peticionaria en el Servicio por Oposición provisto por la Ley de Personal al amparo de las disposiciones de la Sec. 8 de dicha ley necesariamente tuvo por resultado excluirlos de las disposiciones de la Ley Núm. 379 hasta que por virtud de la Ley Núm. 67 de 20 de junio de 1962 (3 L.P.R.A., Sup. 1962, sec. 648(a) (40)), se reintegraron los empleados de la peticionaria al Servicio Exento, o sea que quedaron excluidos de las disposiciones de las Reglas 111 y 112, *supra*, y sujetos nuevamente a las disposiciones de la Ley Núm. 379. ■■■

En vista de lo anteriormente expuesto, resulta claro que por cualquier labor realizada entre el 1 de julio de 1949 (fe-

cha en que se incluyeron a los empleados de la peticionaria en el Sistema de Personal) y el 9 de septiembre de 1952, el interventor no tiene derecho a recibir compensación adicional alguna ya que durante dicho período estaba incluido en el Servicio por Oposición y durante esa época no se proveía compensación adicional alguna bajo la reglamentación de Servicio Civil a empleados gubernamentales por trabajo durante horas extras.   En ese sentido únicamente deberá modificarse nuestra sentencia original.

Para el caso que haya surgido duda sobre el alcance de la expresión en nuestra opinión original al efecto de que la peticionaria puede establecer que cualquier labor extraordinaria prestada por el interventor fue oportunamente satisfecha mediante la concesión de licencia compensatoria o pago en efectivo, aclaramos que esto debe leerse conjuntamente con el escolio 14 de la opinión, de manera que el aludido pago en efectivo sustituye la compensación efectuada mediante la licencia compensatoria que no había sido posible conceder debido a la naturaleza, circunstancias y necesidades del servicio que la peticionaria venía obligada a prestar sin interrupción.

Es, pues, evidente que la expresión en nuestra anterior opinión en este caso al efecto de que "la reglamentación de la Junta de Personal no tiene, por tanto, el efecto de inmunizar al gobierno o a la agencia o instrumentalidad de que se trata de una reclamación por horas extraordinarias trabajadas por sus empleados", lejos de tener el alcance que le atribuyen los *amici curiæ*, de anular y dejar sin efecto el Art. 16 de la Ley Núm. 379 y el Art. 112 de las Reglas de Personal, por el contrario sostiene la validez y efectividad de estas disposiciones, aclarándose, por supuesto, que el referido Art. 16 de la Ley Núm. 379 no inhibía ni invalidaba la acción que en cualquier momento oportuno se podía iniciar bajo la autoridad del Art. 8 de la Ley de Personal y los Arts. 111 y 112 de las Reglas de Personal como en efecto se hizo en este caso.

Al aprobarse el referido Art. 112 indudablemente se tuvo en mente la Sec. 16 de la Carta de Derechos de nuestra Constitución, pero no como un mandato, pues al disponer dicha sección, con referencia a *todo trabajador* que "sólo podrá trabajarse en exceso del límite diario mediante compensación extraordinaria que nunca será menor de una vez y media el tipo de salario ordinario, según se disponga por ley", el propósito fue elevar a rango constitucional la jornada de ocho horas establecida por ley con respecto a "aquel grueso de la clase trabajadora que por razón de especial desvalimiento históricamente ha necesitado protección social". Por tanto, en *Miranda* v. *Falcón*, 83 D.P.R. 735 (1961), concluimos que la citada disposición constitucional no cubre a los agentes viajeros. De acuerdo con nuestro razonamiento en dicho caso, concluimos que los empleados del gobierno en el Servicio por Oposición tampoco quedaron incluidos bajo las disposiciones de la Sec. 16 de la Carta de Derechos.

*Modificada en la forma antes expresada, se confirmará la sentencia de este Tribunal.*