CELIO MARTÍN SANTOS y OTROS, demandantes y recurrentes, *v.* CORPORACIÓN DE RENOVACIÓN URBANA Y VIVIENDA DE PUERTO RICO, ETC., demandada y recurrida; LINO ORTIZ Y OTROS, demandantes y recurrentes, *v.* CORPORACIÓN DE RENOVACIÓN URBANA Y VIVIENDA DE PUERTO RICO, ETC., demandada y recurrida.

*Números:* R-63-5, R-63-6    *Resueltos:* 7 de octubre de 1963

*Antonio Figueroa Rivera,* y *Víctor M. Brignoni,* abogados de los recurrentes; *José R. Vélez Torres, Elí B. Arroyo, José M. Cabrera Detjen* y *Eugenio Ramos Ortiz,* abogados de la recurrida; *J. B. Fernández Badillo, Procurador General, Rodolfo Cruz Contreras, Subprocurador General,* y *Jenaro Marchand, Procurador General Auxiliar,* abogados del Amicus Curiae el Estado Libre Asociado.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

Éstos son casos de reclamaciones de salarios. En el R-63-5, Celio Martín Santos y otros, la querella enmendada expone que los querellantes prestaron servicios a la Corporación de Renovación Urbana y Vivienda de Puerto Rico y a su antecesora la Autoridad sobre Hogares de Puerto Rico como empleados permanentes en relación con sus empresas, proyectos y actividades lucrativas de construcción de edificaciones, edificios e inmuebles, entre otros fines para cederlos en alquiler previa compensación; que tanto la Autoridad sobre Hogares de Puerto Rico como su sucesora la Corporación hicieron trabajar a los querellantes, sin pagarles, en exceso de 40 horas a la semana y durante los 15 minutos libres para merienda

después de las primeras dos horas de trabajo, y durante períodos de tiempo entre las doce del medio día y la una de la tarde; que en ocasiones variaron sin derecho alguno las compensaciones de distintos querellantes, y dejaron cesantes y despidieron a varios de ellos sin justa causa y sin pagarles la mesada. Reclaman también el pago de vacaciones correspondientes al período de diez años anterior al 1ro. de junio de 1962 de conformidad con *lo pactado* a tal efecto con la querellada. En el R-63-6 de Lino Ortíz y otros, la querella contiene parecidas alegaciones, excepto la reclamación referente a vacaciones.

La Corporación querellada interpuso moción para desestimar las querellas. La Sala sentenciadora dictó sentencia desestimándolas, como cuestión de derecho, por entender que a la Corporación de Renovación Urbana y Vivienda de Puerto Rico no le es aplicable la Ley de Salario Mínimo, y como consecuencia de ello, tampoco el Decreto Mandatorio Núm. 11 de la Industria de la Construcción. Tenemos el problema ante nos.

Por la Ley Núm. 88 de 22 de junio de 1957 se crearon la Administración de Renovación Urbana y Vivienda y la aquí querellada Corporación de Renovación Urbana y Vivienda. En términos generales la Administración se creó para la investigación social, económica y técnica en el campo de la vivienda y renovación urbana; estudiar y evaluar los problemas de la vivienda y renovación urbana en el Estado Libre Asociado de Puerto Rico y hacer recomendaciones sobre normas y programas en relación con dichos problemas; planificar a largo plazo en renovación urbana y vivienda y la promoción de la construcción de viviendas privadas a bajo costo. La Corporación se creó como una entidad pública corporativa y política, a quien la Ley confirió los mismos poderes, deberes, funciones y facultades conferidos por legislación anterior a la Autoridad sobre Hogares de Puerto Rico y a las Autoridades Municipales sobre Hogares, y los conferidos a la Administración de Programas Sociales del Departamento de Agricul-

tura y Comercio en lo que concierne a urbanizaciones mínimas. Se le dio poderes para llevar a efecto actividades recreativas y artísticas en las urbanizaciones públicas. [1]

Dispuso la Ley Núm. 88 en su Art. 3 que los funcionarios y empleados de la Administración estarían comprendidos dentro del Servicio por Oposición. Los de la Corporación estarían comprendidos en el Servicio Exento, excepto aquellos que, transferidos a dicha Corporación, fueran empleados regulares dentro del Servicio por Oposición, quienes retendrían su *status*. Los querellantes alegan que han servido bajo la Corporación querellada y también bajo la Autoridad sobre Hogares de Puerto Rico.

En lo aquí pertinente, la Ley Núm. 126 de 6 de mayo de 1938 según ha sido enmendada, al crear a la Autoridad sobre Hogares de Puerto Rico como una corporación pública y política con funciones gubernamentales y personalidad jurídica propia, la facultó para nombrar sus funcionarios, agentes y empleados permanentes y temporeros que fuesen necesarios, y para determinar los requisitos que habrían de llenar, sus deberes y remuneración. Entre sus poderes se le confirió el de preparar, llevar a cabo, adquirir, arrendar, y administrar proyectos de hogares y la reconstrucción, mejoras, alteración o reparación de cualquier proyecto de hogares; convenir las condiciones inherentes a ayuda económica federal en cuanto a la determinación de salarios y jornales prevalecientes, o el pago de salarios y jornales no menores que los prevalecientes o el cumplimiento de las normas de trabajo en el desarrollo o administración de proyectos así como exigir en los contratos que otorgara en relación con un proyecto que el contratista o subcontratista cumplieran con los requisitos de salarios o jornales mínimos y horas máximas de trabajo.

---

[1] Los poderes y facultades de la Autoridad sobre Hogares de Puerto Rico así como sus bienes, contratos, obligaciones, etc., fueron transferidos a la Corporación de Renovación Urbana y Vivienda por Orden Ejecutiva del Gobernador de 9 de octubre de 1958.

Se le facultó para arrendar viviendas, casas, habitaciones, terrenos, edificios y estructuras de cualquier proyecto de hogares, establecer cánones de alquiler, y arrendar con derecho a propiedad y vender solares urbanizados con viviendas o sin ellas, separar solares y venderlos a un precio razonable a personas particulares que lleven actividades en beneficio de un proyecto, e invertir sus fondos no necesarios en propiedades o como garantía. (²)

En lo aquí también pertinente, la Ley de Salario Mínimo de 5 de abril de 1941, Ley Núm. 8, según ha sido enmendada, definió a un "patrono" como toda persona natural o jurídica *de cualquier índole* que, *con ánimo de lucro o sin él*, emplee o permita trabajar cualquier número de obreros, trabajadores o empleados mediante cualquier clase de compensación. "Ocupación" se definió como toda obra, trabajo, servicio, arte, oficio, empleo o actividad, *sea o no para fines de lucro*. "Obrero", "empleado" o "trabajador" se definió como toda persona natural que ejerza, desempeñe o realice cualquier arte, oficio, empleo o labor bajo las órdenes o para beneficio de otro, o a base de contrato de arrendamiento de servicios, o mediante remuneración de alguna clase . . . excluyendo profesionales, ejecutivos o administradores según éstos fueren definidos por la Junta de Salario Mínimo. Y dijo la Ley que los términos definidos se interpretarían siempre en su sentido *más alto y no excluirían* a ninguno otro comprensivo de actividades agríco-

---

(²) La Autoridad adquirió otros poderes y facultades por la Ley de Reurbanización y Construcción de Viviendas, Ley Núm. 97 de 9 de mayo de 1947, y por la Ley sobre Eliminación de Arrabales, Ley Núm. 264 de 14 de mayo de 1945.

Por enmienda de la Ley Núm. 89 de 22 de junio de 1962 se incluyó dentro de la definición "proyecto de hogares" otras estructuras que puedan ser dedicadas a centros comunales que pueden incluir locales destinados a uso comercial.

Y véase la Ley Núm. 79 de 22 de junio de 1954 que autorizó a la Autoridad sobre Hogares a comprar y urbanizar terrenos y a vender o arrendar solares a personas de ingresos moderados *y a obtener beneficios de dichos arrendamientos y ventas* para desarrollar proyectos de eliminación de arrabales, etc.

las, industriales o comerciales, *o de ocupaciones o trabajo de cualquier clase.*

Disponía además la Ley de Salario Mínimo de 1941 que la misma no se aplicaría a personas empleadas por los Estados Unidos, por el Estado Libre Asociado de Puerto Rico o sus municipios, *sin que se entendieran comprendidas entre esas personas en cuanto a los reglamentos o decretos emitidos o que emitiera la Junta, las personas trabajando . . . con corporaciones, autoridades u otros organismos análogos, creados o en parte controlados por dichos gobiernos.*

La Ley de Salario Mínimo de 1956, Ley Núm. 96 de 26 de junio de ese año, que derogó la Ley de Salario Mínimo de 1941, ha dispuesto en lo pertinente—Sec. 33—que la misma no es aplicable a personas empleadas por el Gobierno de los Estados Unidos de América o por el Gobierno del Estado Libre Asociado de Puerto Rico, con excepción de aquellas agencias o instrumentalidades de éste que operen como negocios o empresas privadas. Se define al "patrono" como toda persona natural o jurídica de cualquier índole que, *con ánimo de lucro o sin él,* emplee o permita trabajar cualquier número de obreros, trabajadores o empleados mediante cualquier clase de compensación. "Industria" se define como cualquier campo de actividad económica, y abarca . . . la *construcción,* así como los servicios personales (excepto el doméstico), profesionales y comerciales. "Obrero", "empleado" o "trabajador" se define como toda persona que ejerce, desempeña o realiza cualquier arte, oficio, empleo o labor bajo las órdenes o para beneficio de otro, a base de contrato de arrendamiento de servicios o mediante remuneración de alguna clase, . . . en cualquier industria.

El Decreto Mandatorio Núm. 11 para la Industria de la Construcción, en vigor desde el 1ro. de julio de 1946 en virtud de la Ley de Salario Mínimo de 1941, dispuso que los términos "patrono" y "empleado" o "trabajador" tendrían el mismo significado dado en la Ley, limitado en este caso

a la industria de la construcción. Definió la industria de la construcción como todo acto, proceso, operación, trabajo o servicio necesario o incidental o relacionado con el diseño, proyecto, fabricación, reconstrucción, alteración, reparación y conservación de edificios, construcciones, estructuras, obras y mejoras inmuebles. Dispuso también que dicha industria de la construcción no abarcaba las construcciones, mejoras y obras públicas ejecutadas *por administración* directamente por los Estados Unidos de América, el Pueblo de Puerto Rico o cualquiera de sus divisiones políticas, *aunque sí las realizadas por o para compañías, corporaciones, autoridades o entidades análogas, creadas o total o parcialmente controladas por los Estados Unidos de América, el Pueblo de Puerto Rico o cualquiera de sus subdivisiones políticas, no dedicadas al desempeño de funciones puramente gubernamentales.* Este mismo Decreto Mandatorio Núm. 11 según quedó totalmente reenactado para regir el 20 de marzo de 1956, todavía bajo la Ley de Salario Mínimo de 1941, conservó la anterior disposición, y lo mismo en cuanto a la definición de "patrono", "empleado" o "trabajador".

El Decreto Mandatorio Núm. 44 para la Industria de la Construcción que entró en vigor en 15 de junio de 1958, bajo la Ley de Salario Mínimo de 1956, eliminó la anterior disposición contenida en el Decreto Núm. 11. (³)

Cualquiera que fuera lo que tuvo en mente la Junta de Salario Mínimo al usar el concepto "puramente gubernamentales", y lo que entendió por el adverbio de modo "puramente", no podemos darle a esa parte del Decreto una interpretación más restrictiva, ni más excluidora que la disposición correspondiente de la Ley. Ya hemos visto que la Ley de Salario Mínimo de 1941 bajo la cual se promulgó el Decreto,

---

(³) La Corporación querellada nos dice en su alegato, citando las Actas de la Junta de Salario Mínimo, que ello se debió a la manera en que la Ley de 1956 se expresó en cuanto a personas empleadas con el gobierno o con sus instrumentalidades.

al excluir de sus disposiciones a personas empleadas por el Gobierno de Estados Unidos, del Estado Libre Asociado de Puerto Rico o sus municipios, expresamente eliminó de la exclusión aquellas personas que trabajaren con corporaciones, autoridades u otros organismos análogos creados o en parte controlados por dichos gobiernos.

▪ Ya hemos visto también que la propia Ley definió "patrono" como la persona natural o jurídica *de cualquier índole*, que con ánimo de lucro o sin él, emplea cualquier número de obreros, trabajadores o empleados mediante compensación, y que "ocupación" se definió como todo trabajo, servicio . . . empleo o actividad *fuere o no para fines de lucro*. No es necesario que entremos en un análisis para determinar si la Autoridad sobre Hogares de Puerto Rico o su sucesora la Corporación de Renovación Urbana, ejercen funciones "puramente" gubernamentales o meramente gubernamentales. Podemos aceptar que ejercen funciones gubernamentales como tales corporaciones públicas. Bajo las disposiciones de la Ley de Salario Mínimo de 1941 sus trabajadores o empleados no están expresamente excluidos de dicha Ley. Por el contrario, en términos generales están claramente incluidos.

▪ Posiblemente, la posición de los demandantes no sea exactamente igual bajo la Ley de Salario Mínimo de 1956 la cual, al excluir de sus disposiciones a las personas empleadas por el Gobierno del Estado Libre Asociado de Puerto Rico elimina de la exclusión, o sea, incluye bajo las disposiciones de la Ley a aquellas agencias o instrumentalidades que operen como negocios o empresas privadas. No es necesario ahora para resolver este caso en que carecemos de los elementos de juicio que aporta la prueba, el determinar el contenido de la expresión "agencias o instrumentalidades de éste [el gobierno] que operen como negocios o empresas privadas". Quizás se requieran unos hechos para darle cabal aplicación. Posiblemente se refiera a la forma o la manera de realizar las actividades encomendadas, ya que aun cuando las instrumentali-

dades públicas del gobierno obtengan lucro en sus operaciones, dicho lucro nunca sería para el beneficio privado de un ciudadano o grupo de ciudadanos. No es necesario, sobre todo cuando estamos resolviendo un caso a base de una moción para desestimar careciendo de los elementos de juicio que ofrecen los hechos para la aplicación del derecho, porque la propia Ley de Salario Mínimo de 1956 dispone en su Sec. 40 que quedarían convalidados y ratificados y continuarían en pleno vigor y efectividad, en todos sus términos, con las modificaciones que por las disposiciones de esa Ley o por orden de la Junta se introdujeren en cuanto a salarios, todos los decretos, órdenes, reglas y reglamentos que hubieren sido promulgados por la Junta de Salario Mínimo al amparo de la Ley Núm. 8 de 1941, y que las disposiciones de los Decretos Mandatorios vigentes al aprobarse la Ley de 1956, excepto las relativas al salario mínimo, subsistirían en toda su fuerza y vigor aun cuando la Junta posteriormente variare los tipos de salario mínimo.

En la Ley de Salario Mínimo de 1941, el Legislador hizo expresión de una política pública general clara y definida. Dijo entre otras cosas, que la existencia de condiciones de trabajo perjudiciales a la conservación de las normas mínimas de vida necesarias para la *salud, la eficiencia y el bienestar general de los trabajadores en las distintas ocupaciones* hace que . . . y (5) representa un estado de manifiesta injusticia social; que es la política de la Ley, mediante el ejercicio de la facultad de la Asamblea Legislativa para decretar leyes *para la protección de la vida, salud y seguridad de empleados y obreros*, corregir y eliminar esas condiciones de trabajo en las distintas ocupaciones; y proteger a los trabajadores en sus medios de vida. Igualmente, en la Declaración de Principios de la Ley de Salario Mínimo de 1956 repitió el Legislador que la existencia de salarios, horas de labor y otras condiciones de trabajo inadecuadas en la industria es *perjudicial a la salud, eficiencia y bienestar de los trabajadores;* . . . crea

desasosiego y motiva conflictos entre obreros y patronos; . . . declaró ser la política pública del Estado Libre Asociado de Puerto Rico el eliminar tan rápidamente como sea posible las condiciones de trabajo inadecuadas en las industrias, *promover normas de vida, salud y seguridad para los trabajadores* . . . .

■ Desde el punto de vista de la salud, de la eficiencia, del nivel de vida y de la justicia social, esa filosofía, y la razón de ser de esa política pública tienen tanto sentido para el trabajador o empleado de una industria o negocio privado como para el trabajador o empleado que hace similar labor para una corporación o instrumentalidad gubernamental. De manera que sólo ante expresiones claras del Legislador que así lo disponga sin lugar a dudas, respondiendo tal vez a otra política pública deseable—la sabiduría o ausencia de sabiduría de la cual no es parte del quehacer judicial—debemos los tribunales excluir a trabajadores o empleados de las protecciones de las leyes del trabajo. Esto quiere decir que la interpretación de esas leyes debe ser en forma tal que tienda a incluir bajo su protección al obrero o empleado, y no a excluirlo.

Esa norma de interpretación es de mayor rigor ante la declaración constitucional, de gran jerarquía, al efecto de que todo trabajador tiene derecho a recibir igual paga por igual trabajo, a un salario mínimo razonable, a protección contra riesgos para su salud o integridad personal en su trabajo o empleo, y a una jornada ordinaria que no exceda de ocho horas de trabajo; y que sólo podrá trabajarse en exceso de este límite diario mediante compensación extraordinaria que nunca será menor de una vez y media el tipo de salario ordinario dispuesto por ley.

No necesitamos de la anterior declaración del Pueblo para resolver este caso, que se resuelve a base de la propia situación estatutaria envuelta. No tenemos aquí el problema constitucional que analizamos y resolvimos en *A. D. Miranda,*

*Inc.* v. *Falcón*, 83 D.P.R. 735 (1961).(⁴) Sí hacemos mención de esta declaración constitucional porque junto a la política pública legislativa ya expresada, se da el acento de la pauta que debemos seguir los tribunales como norma de interpretación de la legislación del trabajo, que debe ser en contra de la eliminación de un trabajador de las disposiciones favorables de dicha legislación a menos que, como ya dijimos, sea un caso de exclusión clara estatutaria.

Casi es innecesario repetir la norma jurídica, de gran sazón, que requiere que un pleito no debe desestimarse definitivamente por falta de causa de acción o razón de pedir a menos que bajo toda situación posible de hecho envuelta y toda concepción posible del derecho aplicable, no exista base para reclamar. Para llegar a este criterio, tanto los hechos como el derecho aplicable han de tomarse de la manera más favorable a un reclamante. Se impone la norma porque desestimar un pleito sin los elementos de juicio que ofrece una prueba para encontrar el derecho aplicable, es una acción drástica que puede conducir a la negativa del derecho a ser oído a cabalidad. A la luz de las disposiciones citadas de las Leyes de Salario Mínimo de 1941 y 1956, y del Decreto Mandatorio para la Industria de la Construcción, que por la Ley de 1956 quedó en vigor, quizás la Sala sentenciadora convenga con nosotros en que es arriesgado resolver definitivamente que estos querellantes no tienen derecho alguno a reclamar sólo con la información de hecho poco específica y deficiente que ofrecen las querellas. Es preferible que el derecho de estos empleados se determine con los elementos de juicio de una prueba, sobre todo si se considera que el tipo de funcionamiento o la manera de realizar sus actividades la Corporación querellada presenta una cuestión de hecho. La reclamación por vacaciones se alega que fue de conformidad con lo pactado con la querellada.

---

(⁴) Tampoco se presenta cuestión igual a la resulta en *Autoridad de Comunicaciones* v. *Tribl. Superior*, 87 D.P.R. 1 (1962).

Expone la distinguida representación legal de la Corporación querellada en su alegato, y citamos: "No puede perderse de vista el hecho de que la recurrida es una corporación pública con funciones gubernamentales que no puede, aún cuando así lo quisiere, dedicarse a actividades propias de la empresa privada . . . . Si a la recurrida se le impusiera la obligación de cumplir con las leyes del trabajo, se estaría poniendo en peligro el programa de nuestro Gobierno de proveer viviendas a las personas de escasos recursos y de eliminar arrabales, toda vez que el costo de construcción y administración de las urbanizaciones públicas y de otras facilidades que la recurrida tiene disponibles para tratar de resolver la urgencia de viviendas, así como el costo de eliminación de arrabales, sería tan alto que sería imposible para el erario público soportar la carga, aún cuando tuviéramos el concurso económico de las agencias del Gobierno de Estados Unidos.

"Reconocemos que los trabajadores deben tener derecho a salarios y condiciones de trabajo adecuados, sin embargo, creemos que el ejercicio de dicho derecho por este sector de la ciudadanía debe estar supeditado al bienestar de la comunidad en general y, si prevaleciera la alegación de los recurrentes en este caso, los intereses de la comunidad en general resultarán adversamente afectados por los intereses particulares de unos pocos."

■ Nos percatamos del argumento, que primordialmente corresponde a criterios legislativos. Pero en tanto se esgrime como argumento para el criterio judicial en la interpretación liberal o restrictiva de esas leyes, se nos ocurre pensar que las normas mínimas de vida necesarias para la salud y la eficiencia y los males de la salud no seleccionan los cuerpos de los trabajadores o empleados. Si esas normas mínimas y esa protección de la salud aumenta los costos de los proyectos de la Corporación querellada, preferible sea que dichos costos se repartan entre toda la comunidad, que así, infinitesimal, pesan menos a cada uno, a que sólo unos pocos carguen con el

sacrificio, por cierto, unos pocos que en la sociedad no son económicamente mucho más fuertes, ni están mucho mejor servidos que aquellos para cuyo beneficio la querellada realiza sus proyectos.

*Se dejarán sin efecto las sentencias desestimadoras y se devolverán los casos a la Sala sentenciadora para procedimientos ulteriores compatibles con lo aquí dispuesto.*