MUNICIPIO DE GUAYNABO, peticionario, *v.* TRIBUNAL SUPE-RIOR DE PUERTO RICO, SALA DE BAYAMÓN, demandado; ELIEZER BENÍTEZ PABÓN ET AL., interventores.

*Número:* O-67-390     *Resuelto:* 27 de junio de 1969

546

*Luis Torres Bonet* y *Ramón Mellado González,* abogados del peticionario; *Rafael S. Fuentes Rivera,* abogado de los interventores.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

¿Tienen derecho los trabajadores de la limpieza pública de un municipio a recibir compensación extraordinaria por las horas trabajadas en exceso de la jornada legal? Ésta es la cuestión que se plantea en este recurso. Sucintamente expuestos los hechos son los siguientes:

Un grupo de trabajadores de la limpieza pública del Municipio de Guaynabo radicó una demanda contra el Municipio reclamando el pago de horas extras, de vacaciones, de días feriados y de horas de almuerzo trabajadas y no compensadas. El Municipio solicitó la desestimación de la demanda amparándose en la exclusión establecida en la Ley Núm. 379 de 15 de mayo de 1948, 29 L.P.R.A. sec. 285.[1] El tribunal de instancia denegó la desestimación solicitada fundándose en el Art. II, Sec. 16 de la Constitución del Estado Libre Asociado, la cual dispone en lo pertinente que todo trabajador tiene derecho a una jornada ordinaria que no exceda de ocho horas de trabajo y que sólo podrá trabajarse en exceso de este límite, mediante compensación extra-

---

[1] El Art. 16 de la Ley Núm. 379 dispone:

". . . No se aplicarán las disposiciones de las secs. 271 a 288 de este título a los empleados del Gobierno Estadual, de los gobiernos municipales, ni del Gobierno de la Capital ni a los de las agencias o instrumentalidades de dichos gobiernos, con excepción de aquellas agencias o instrumentalidades que se dediquen a empresas agrícolas, industriales, comerciales o de servicio público."

ordinaria que nunca será menor de una y media vez el tipo de salario ordinario. (²)

■ En *A. D. Miranda, Inc.* v. *Falcón*, 83 D.P.R. 735 (1961) estudiamos detenidamente el origen de la Sec. 16 del Art. II de la Constitución en su contexto histórico y concluimos que el concepto "todo trabajador" a que la misma se refiere no incluía a los viajantes vendedores y vendedores ambulantes. El análisis que hicimos en dicho caso de las vistas, memoriales, informes y debates de la Convención Constituyente demostró que lo que tuvo en mente la Convención Constituyente al adoptar esta sección fue proteger, no a todo el que trabaja, sino a la gran masa "trabajadora que por razón de especial desvalimiento históricamente ha necesitado", aunque no siempre ha recibido "protección social." Véanse Informe de la Comisión de Carta de Derechos, 4 Diario de Sesiones Convención Constituyente, pág. 2573; 21 Rev. Jur. U.P.R. 25. Véase además, el Escolio 9 de *Espasas Dairy, Inc.* v. *J.S.M.*, 96 D.P.R. 816, 820 (1969). A tenor con esta interpretación y utilizando el mismo razonamiento en *Autoridad de Comunicaciones* v. *Tribl. Superior*, 87 D.P.R. 1 (1962) excluimos del ámbito de esta disposición constitucional a los empleados del Gobierno cubiertos en el Servicio por Oposición. Los empleados del Gobierno gozan de holgada protección en el Sistema de Personal del Estado Libre Asociado, el cual recoge y amplía las garantías básicas contenidas en la Carta de Derechos, salvo que la compensación adicional por horas extras trabajadas se paga en forma de licencia compensatoria. Art. 112 Reglamento de

---

(²) El Art. II, Sec. 16 de la Constitución lee:

"Se reconoce el derecho de todo trabajador a escoger libremente su ocupación y a renunciar a ella, a recibir igual paga por igual trabajo, a un salario mínimo razonable, a protección contra riesgos para su salud o integridad personal en su trabajo, y a una jornada ordinaria que no exceda de ocho horas de trabajo. *Sólo podrá trabajarse en exceso de este límite diario, mediante compensación extraordinaria que nunca será menor de una vez y media el tipo de salario ordinario, según se disponga por ley.*" (Énfasis nuestro.)

Personal, 3 R.&R.P.R. sec. 647–112. Dicho sistema establece normas adecuadas para garantizar a los empleados del Gobierno vacaciones regulares y por enfermedad, permanencia, participación en planes de retribución uniforme, planes de retiro, y otros beneficios.

■ Igualmente, los trabajadores irregulares del Gobierno, obreros diestros, semidiestros y no diestros, que no están cubiertos por el Sistema de Personal, están protegidos por el Reglamento Para el Empleo del Personal Irregular, 3 R.&R.P.R. secs. 711a–1 a 711a–20. La ley define al trabajador irregular como aquellos que cumplen deberes y responsabilidad de duración determinada cuando las condiciones y naturaleza del trabajo hacen impracticable la creación de puestos. 3 R.&R.P.R. sec. 711a–3.([3]) Este reglamento establece una jornada regular de ocho horas proveyendo para el pago de horas extras a tiempo doble a base del tipo de

---

([3]) La Sec. 711a–3 dispone:

"(a)  Podrá denominarse personal irregular para los fines de este subcapítulo únicamente el personal cuyas ocupaciones estén comprendidas en la guía de clasificación de funciones para grupos de trabajos irregulares, siempre y cuando medie una o más de las siguientes condiciones y circunstancias:

(1) Que realiza trabajo temporero cuya naturaleza y duración no justifican la creación de puestos, según este término se define en la Ley de Personal [3 L.P.R.A. secs. 641 a 678];

(2) Que realiza trabajo intermitente en grado tal que no sería conveniente crear puestos, según este término se define en la Ley de Personal;

(3) Que realiza tareas imprevistas, aunque no haya interrupción entre las mismas;

(4) Que realiza tareas de tal naturaleza que nadie estaría dispuesto a realizarlas regularmente, aunque sí por tiempo limitado;

(5) Que trabaja normalmente no más de 2 horas diarias debido a que sus servicios no son necesarios por más tiempo, aunque éstos se requieran diariamente y con regularidad.

(b) Se considerará 'personal irregular' cualquier empleado no incluido en la guía y cuyos servicios se requieran en casos de extrema urgencia, y cuya retribución sea conveniente pagarla por hora o por día. Ninguna persona será empleada en estas condiciones por un período mayor de 30 días en cualquier año fiscal. La retribución se fijará, hasta donde sea posible, con arreglo a las escalas del Plan de Retribución Uniforme."

compensación ordinaria. También reglamenta la concesión de licencia de vacaciones regulares y por enfermedad.

■ Como puede verse, con respecto a la clase trabajadora—a la clase sobre la cual se extiende el manto protector de la Sec. 16 del Art. II de la Constitución—el Gobierno del Estado Libre Asociado da fiel cumplimiento a la jornada legal fijada en dicha sección. No podía ser de otra manera, ya que el propósito fundamental de esta sección es el proteger la salud, la seguridad y la vida de la gran masa trabajadora. En la consecución de un propósito social tan importante no podía excluirse a un sector tan numeroso de la clase trabajadora. En ese sentido nos expresamos en *Martín Santos* v. *C.R.U.V.*, 89 D.P.R. 175, 185 (1963) al referirnos a los trabajadores empleados por instrumentalidades gubernamentales: "Desde el punto de vista de la salud, de la eficiencia, del nivel de vida y de la justicia social, esa filosofía, y la razón de ser de esa política pública tiene tanto sentido para el trabajador o empleado de una industria o negocio privado como el trabajador o empleado que hace similar labor para una corporación o instrumentalidad gubernamental . . . ."

No vemos razón alguna para que los trabajadores de los gobiernos municipales no gocen de la protección constitucional de la jornada legal, al igual que lo gozan los trabajadores del Gobierno del Estado Libre Asociado. La pretensión en contrario del recurrente no se basa ni en el texto ni en el espíritu de la Sec. 16 del Art. II de la Constitución. Se funda esencialmente en la exclusión establecida en la Ley Núm. 379 de 1948 [4] y en el argumento de que esta exclusión estaba vigente cuando se aprobó la Constitución. Es sabido que en los debates de la Convención Constituyente no se planteó ni discutió la necesidad de excluir a los trabajadores del Gobierno o de los municipios de la precitada Sec. 16. *Autoridad de Comunicaciones* v. *Tribl. Superior*, supra, a la

---

[4] Véase Escolio 1 para el texto específico de la exclusión.

página 11. Esto ocurrió, a pesar de que dicha exclusión era muy conocida por el liderato obrero presente en la Convención Constituyente. Es lógico inferir que siendo tan tajante la redacción de la Sec. 16—"se reconoce el derecho de *todo trabajador*"—los miembros de la Convención no tuvieron duda alguna de que dicha sección cubría a *todos* los trabajadores sin excepción. [5] Refuerza esta conclusión el hecho de que la Sec. 16 del Art. II no hace distinción alguna entre los trabajadores del Gobierno como tal y los trabajadores de las agencias o instrumentalidades del Gobierno que funcionan como empresas o negocios privados. Sin embargo, las secciones inmediatamente siguientes, las números 17 y 18, que cubren los derechos de organización y negociación colectiva, así como los derechos de huelgas y piquetes, expresamente distinguen entre los trabajadores del Gobierno como tal y los trabajadores de las agencias e instrumentalidades del Gobierno que funcionan como empresas o negocios privados, reconociendo a estos últimos tales derechos y no reconociéndoselos a aquellos. [6]

---

[5] Debe tenerse presente lo que expresamos en *A. D. Miranda, Inc.* v. *Falcón*, supra, y que aquí reafirmamos, "que todo trabajador" no quiere decir todo el que trabaja sino más bien la "masa trabajadora".

[6] Las Secs. 17 y 18 leen como siguen:

*Sección 17.* "Los trabajadores de empresas, negocios y patronos privados y *de agencias o instrumentalidades del gobierno que funcionen como empresas o negocios privados* tendrán el derecho a organizarse y a negociar colectivamente con sus patronos por mediación de representantes de su propia y libre selección para promover su bienestar. (Énfasis nuestro.)

*Sección 18.* "A fin de asegurar el derecho a organizarse y a negociar colectivamente, los trabajadores de empresas, negocios y patronos privados y *de agencias o instrumentalidades del gobierno que funcionen como empresas o negocios privados* tendrán, en sus relaciones directas con sus propios patronos, el derecho a la huelga, a establecer piquetes y a llevar a cabo otras actividades concertadas legales. (Énfasis nuestro.)

Nada de lo contenido en esta sección menoscabará la facultad de la Asamblea Legislativa de aprobar leyes para casos de grave emergencia cuando estén claramente en peligro la salud o la seguridad públicas, o los servicios públicos esenciales."

No se nos escapa la razón que comúnmente se aduce de falta de recursos gubernamentales para cumplir con la disposición sobre jornada legal. En *Martín Santos v. C.R.U.V.*, supra, contestamos debidamente el argumento presupuestario expresando: ". . . en tanto se esgrime como argumento para el criterio judicial en la interpretación liberal o restrictiva de esas leyes, se nos ocurre pensar que las normas mínimas de vida necesarias para la salud y la eficiencia y los males de la salud no seleccionan los cuerpos de los trabajadores o empleados. Si esas normas mínimas y esa protección de la salud aumenta los costos de los proyectos de la Corporación querellada, preferible sea que dichos costos se repartan entre toda la comunidad, que así, infinitesimal, pesan menos a cada uno, a que sólo unos pocos carguen con el sacrificio, por cierto, unos pocos que en la sociedad no son económicamente mucho más fuertes, ni están mucho mejor servidos que aquellos para cuyo beneficio la querellada realiza sus proyectos."

Quizá, el argumento presupuestario pudo haber tenido mayores visos de justificación cuando se aprobó la Ley Núm. 379. Pero, como es de conocimiento general, nuestra economía ha superado ya los estrechos límites económicos de aquella época. (⁷)

■ En resumen, concluimos que la exclusión de los trabajadores municipales del pago de tiempo doble por jornada extraordinaria establecido en la Ley Núm. 379 de 15 de mayo

---

(⁷) Los siguientes datos suministrados por el Negociado de Asuntos Municipales del Departamento de Hacienda reflejan esto adecuadamente: el *Valor de la Propiedad* de los municipios a enero 1ro. de 1948 era de $401,496,755.00, mientras que ese mismo valor para enero 1ro. de 1968 era de $3,540,318,820.00; el *Ingreso Municipal* para el 1948 fue de $16,059,-672.00, comparado con el de $126,973,650.00 para el 1968; el *Total Disponible* para 1948 era de $22,207,328.00 mientras que ese mismo renglón para 1968 se elevaba a $172,544,310.00; los *Desembolsos* fueron de $16,135,-323.00 para el 1948 y de $133,122,075.00 para el 1968; el *Saldo Para el Siguiente Año* en 1948 era de $6,072,005.00 comparado con $39,422,235.00 para el 1968.

de 1948, no tiene el alcance de excluirlos indefectiblemente del beneficio del pago de tiempo y medio mínimo que la Sec. 16 del Art. II de la Constitución dispone para la clase trabajadora.

*Se anulará el auto expedido y se devolverá el caso al tribunal de instancia para los procedimientos ulteriores que fueren de rigor.*

El Juez Asociado Señor Ramírez Bages es de opinión que debiera dársele efecto prospectivo a esta sentencia.